## THE SAN FRANCISCO GAS COMPANY *v.* THE CITY OF SAN FRANCISCO.

An answer is fatally defective if it does not deny any of the material allegations of a verified complaint, either positively or according to information and belief; the only forms in which the allegations of a verified complaint can be controverted so as to raise an issue. A denial in any other form is unknown to our system of practice, and cannot have any legal effect.

The answer that the defendant, a municipal corporation, has "no knowledge or information" in respect to the allegations of a count in a verified complaint, "and therefore denies the same," is insufficient.

The statute imposes upon the defendant, if a natural person, and if a corporation, upon its officers and agents, the duty of acquiring the requisite knowledge or information respecting the matters alleged in a verified complaint, to enable them to answer in the proper form.

The rule which requires a defendant to answer positively as to the facts alleged in a verified complaint, which are presumptively within his own knowledge, applies to municipal corporations. The statute makes no distinction between the rules of pleading applicable to natural persons and those applicable to artificial persons.

*Per Field, J.*—A municipal corporation, outside of its governmental capacity, is in many respects to be regarded the same as a private corporation, and its officers and agents through whom it acts, must be presumed to know the contracts it enters into, the purchases it makes, and the property it uses. The knowledge of such matters must rest with some of its officers, and the corporation can not shelter itself under an assertion of ignorance.

Under some circumstances a municipal corporation may become liable by implication. The obligation to do justice rests equally upon it as upon an individual. It can not avail itself of the property or labor of a party, and screen itself from responsibility under the plea that it never passed an ordinance on the subject. As against individuals, the law implies a promise to pay in such cases, and the implication extends equally against corporations.

A corporate act is not essential in all cases to fasten a liability, and if it were necessary the law would sometimes presume, in order to uphold fair dealing, and prevent gross injustice, the existence of such act, and estop the corporation from denying it.

Where the contract is executory, the corporation cannot be held bound unless the contract is made in pursuance of the provisions of its charter; but where the contract has been executed, and the corporation has enjoyed the benefit of the consideration, an implied *assumpsit* arises against it.

It will be presumed, for the purposes of justice, that the authority exercised by the officers of the corporation was properly delegated to them, and that contracts made by them, without authority, have been ratified.

*Per Burnett, J.*—A specific denial to each allegation of a complaint is a separate denial, applicable only to the particular allegation controverted.

When the facts alleged in a verified complaint are presumptively within the knowledge of the defendant, the Code requires his denial to be *specific*, not general, The object of the provision is to call the attention of the defendant, and to confine each denial to one allegation at a time, and not permit him to deny all at once.

The object of the Code was to narrow the proofs upon the trial; and, to accomplish this end, the plaintiff was allowed to verify his complaint, and thus compel the defendant to deny specifically each separate allegation.

There may exist the best reasons for a different rule of pleading when a municipal corporation is a defendant, but this Court can make no distinction, because the Code makes none. It is a matter for the Legislature, and not for the Court.

APPEAL from the Superior Court of the City of San Francisco.

This was an action of *assumpsit.*

The complaint contains two counts: The first, to recover

twenty-six thousand dollars, or thereabouts, for gas furnished for lighting the streets of San Francisco, under a contract between the city and James Donahue & Co., which was assigned to the plaintiff. This contract was before the Supreme Court, and affirmed in the case of the San Francisco Gas Company v. The City, 6 Cal. R., 190. On this count no question is now made.

The second count is for gas furnished by plaintiff to defendant outside of the contract, for lighting the city-hall and fire-engine houses belonging to the city, from November 1, 1854, to June 1, 1856—amounting in the aggregate to eighteen thousand one hundred and eighty-eight dollars and ninety-eight cents. The complaint alleges that plaintiff, at request of defendant, furnished, during the said time, large quantities of gas for lighting the city-hall and fire-engine-houses belonging to defendant, and that defendant used and consumed the same for said purposes; that the same was furnished and consumed nightly between the dates aforesaid; that, in consideration of the premises, the defendant promised to pay the plaintiff the value of the gas so furnished and consumed, and that the value of the same is eighteen thousand one hundred and eighty-eight dollars and ninety-eight cents. Schedules are annexed, showing monthly bills for gas. The question before the Court is upon this count.

The complaint is duly verified by the oath of the President of the San Francisco Gas Company.

The only answer to the second count is in the following words, to wit:

"And this defendant, further answering, saith, that the defendant has no knowledge or information in relation to the allegations of the second count of the said complaint; and, therefore, denies the same."

By consent of parties by their counsel, entered in open Court, the cause was referred to Gilbert A. Grant for trial, and afterwards duly tried before him as referee, both parties being present by their counsel. The referee reported in favor of the plaintiff, finding due under the contract set out in the first count the sum of $26,686 34; and for gas furnished under the second count, for lighting the city-hall and the fire-engine-houses, the sum of $18,188 98.

The facts found by the referree under this second count are sufficiently stated in the opinion of Mr. Justice Field.

In addition to the facts found from the evidence introduced, the referee found as follows:

"In addition to the foregoing facts found from the testimony introduced, I also find, that the allegations contained in the second count of the complaint are not sufficiently controverted in the answer; and the allegations of the second count, for the purposes of the action, must be taken as true under the forty-sixth and sixty-fifth sections of the Practice Act."

As a conclusion of law upon the facts, the referee found that the plaintiff was entitled to recover the sum of $44,875 32.

The report having been filed, judgment for the amount was entered on the twentieth day of January, 1857. Afterwards notice of intention to move to set aside report of referee, was given; a statement was prepared, and the motion was made.

The only point made on the motion was, that no ordinance authorizing the furnishing of gas for lighting the city-hall and engine-houses was introduced in evidence, and for that reason the city was not liable.

On the seventh of March the Court ordered that so much of the said report of the referee as allowed the plaintiff for gas furnished for the engine-houses and city-hall, (being the amount claimed in the second count,) be set aside, and that said report in all other respects be confirmed, and that judgment be entered accordingly.

Judgment was entered in accordance with this order, March 18, 1857, in favor of plaintiff on the first count, and against the plaintiff on the second count; also vacating the judgment entered January 20, 1857.

Plaintiff appealed from so much of said last-mentioned judgment as was against plaintiff on the second count, and that portion of the judgment vacating the former judgment; also, from so much of the order of March 7th as set aside the report of the referee as to said second count, and asked that the portions of the judgment and order appealed from be reversed, and that the judgment be so modified as to give judgment in favor of plaintiff for the whole amount.

*N. Bennett, Lorenzo Sawyer,* and *Jo. G. Baldwin,* for Appellant.

Appellant makes the following points. The question before the Court arises on the second count only.

1. The Court erred in setting aside the report of the referee, as to the sum found due under the second count, for gas furnished for lighting the city-hall and fire-engine-houses, and ordering judgment accordingly.

The complaint was verified by oath, and the allegations of the second count were not denied in pursuance of the provisions of the statute, and the allegations of said count for the purposes of this action must be taken as true. No proof, whatever, is required upon this count, there being no issue joined. It was not necessary, therefore, to introduce any ordinance, if there was one.

The only answer to the allegations of the second count is in the following words, to wit: "And this defendant, further answering, saith, that this defendant has no knowledge or information in relation to the allegations in the second count; and, therefore, denies the same."

The Practice Act, as amended in 1854, section forty-six, provides that: " The answer of the defendant shall contain—first, if the complaint be verified, a specific denial to each allegation of the complaint controverted by the defendant, or a denial thereof, according to his information and belief," etc. And section sixty-five provides that : " Every material allegation of the complaint, when it is verified, not specifically controverted by the answer, shall, for the purposes of the action, be taken as true."

Now, there is no " specific denial of each allegation ;" and if there was, the form of the denial is insufficient. Defendant says it " has no knowledge or information, * * * and therefore denies the same."

There is no denial, " according to his information and belief." The defendant may be fully satisfied, and firmly believe, and, in fact, morally certain, that every allegation is true, and yet make the denial in this form ; while it could not be denied in the form prescribed by the statute. The statute is thus evaded ; and the object of the provision defeated, if this form of denial be admissible.

Under sections forty-six and sixty-five there was, then, no issue, and the allegations of the second count must be taken as true. The referee could not have done otherwise than find for the plaintiff on that count, had there been no evidence at all. No evidence was required.

And this Court so held, in Anderson v. Parker et al., 6 Cal. R., 197.

So, under a similar provision of the New York Code, of 1848 and 1851, it has been repeatedly held that a general answer, like the above, is insufficient. The Court say, in Seward v. Miller : " It is important, in every case, that the defendant should specify which allegations he deems material, and intends to controvert, in order that plaintiff may clearly know what is denied, and what may be necessary for him to prove. It is particularly so for many reasons, when defendant is required to swear to his answer." Seward v. Miller, 6 How. Prac. R., 312 ; Rosenthal v. Bush, 1 Code R., (New Series,) 228.

Again, the form of the denial is insufficient, for reasons above stated. Edward v. Lent, 8 Prac. R., 28 ; Ketchum v. Zereca, 1 Smith, 554. And the facts are presumptively within the knowledge of defendant ; and in such cases the defendant, whether an individual or a corporation, is not at liberty to deny knowledge or information. Sherman v. New York Cent. Mills, 1 Abbott, 187 ; Thorne v. New York Cent. Mills, 10 Pr. R., 20.

The Court erred, then, on this ground alone, in setting aside the report of the referee as to the second count, and in entering judgment accordingly.

2. Upon the facts found by the referee, from the testimony,

the plaintiff is bound to recover the amount found due under the second count, and it was erroneously set aside.

Corporations may become liable by implication, like individuals; and under the facts and circumstances of this case as found, it was not necessary to the validity of the claim that there should have been an ordinance to authorize the furnishing of gas for this purpose, and the case does not, as supposed, fall within the rule laid down in Lucas, Turner & Co. *v.* The City of San Francisco, 7 Cal., 463.

The want of an ordinance was the only point made by defendant's counsel, and defendant relied upon the case of Lucas, Turner & Co. *v.* The City of San Francisco.   In that case, however, the suit was brought upon a written contract in relation to matters arising under peculiar and special provisions of law, to wit: for improvement of public streets.   (See Art. III, Sec. 13, and Art. V, of Charter of 1851.)   These are improvements not absolutely necessary to the transactions of the ordinary business of the corporation, and from which the public only derive a partial benefit and private citizens are the greatest beneficiaries, in consequence of the enhancement of the value of their property. Hence the law prescribes that the property benefited shall pay the greater portion of the expense.   And for the protection of the city as well as the corporation, certain formalities are required to be observed in making contracts, and unless these formalities are observed, there is no liability upon the contract as such.   This appears to be the point of the decision of that case, and it was decided under the provisions of the act above cited; the question arising under those sections.

But section thirteen of article three only provides for the formalities to be observed in the exercise of those powers which are of a governmental nature—its police powers—or those powers of a sovereign nature delegated to the local government, such as require, in the language of the section, "necessary laws," as will be seen by examining the language of the section, and the various objects referred to.   It does not refer at all to the ordinary necessary incidental expenses that are arising and recurring from day to day, and cannot by any possibility be avoided.

The expenses in this case are incurred by virtue of the ordinary powers incident to every corporation without being conferred in express terms.   And they are no part of its governmental or police powers, and do not come within the purview of those powers that require " laws" enumerated in section thirteen.

Had the gas been furnished to a natural person in a similar manner, there can be no doubt of his liability to pay what it was reasonably worth.   The law would imply a promise to pay, and a promise may also be implied under similar circumstances on the part of a corporation.

" Therefore, where one built a school-house under contract

with persons assuming to act as a district committee, but who had no authority, yet a district-school was afterwards kept in it by direction of the school-agent; this was held to be an acceptance of the house on the part of the district, and binding the inhabitants to pay the reasonable value of the building." Syllabus, 7 Greenl., 96.

The Court says in this case, " If one accepts or knowingly avails himself of the benefit of services done for him without authority or request, he shall be held to pay them a reasonable compensation for them. So, in the present case, the same principle may be applied." Abbott v. Third School-District in Herman, 7 Greenl., 98.

So, a corporation was held liable for the benefits received when the statute required a particular form to render it liable on an express contract. In the Episcopal Church Society v. Episcopal Church in Dedham, the Court say : " In a legal point of view, however, the church or proprietors were only a voluntary religious society, and after the passing of the statute, could make contracts only through the organs appointed by the statute, viz. : the rector, wardens, and vestry : so that the note given by the rector and wardens only under a vote of the proprietors, would bind the proprietors only as joint-contractors associated together as partners, and not as a corporation. Nevertheless, if the debt of which the note is evidence was incurred for the benefit of the corporation, which was made by the statute to represent the church or the proprietors, and the money procured actually went to their use, they knowing the circumstances under which it was procured, an action must certainly lie to recover the money; otherwise, manifest wrong and injustice would be done." The Epis. Ch. Society v. Epis. Church in Dedham, 1 Pick., 373.

Here, although the contract was void, the corporation was held liable for benefits enjoyed with the knowledge of the officers.

In case of Proprietors of the Canal Bridge Co., the question was, whether the corporation could be bound by implication. No positive corporate act could be shown, except a mere acquiescence in certain proceedings by another corporation without objection for a considerable period of time. The Court say :

" The question is then narrowed to this, have the proprietors of the Canal Bridge assented to this proposition and acted under it ? We find no vote to this effect, but we do find that the crossbridge was suffered to unite with theirs pursuant to the proposition, and that for four years all were suffered to pass without toll who came from Charlestown to Cambridge, or vice versa. Now, corporations can be bound by implication as well as individuals, as has been before stated, and no act can be stronger to show an assent to a proposition, an agreement, or bargain, than those we have just mentioned." Proprietors of Canal Bridge v. Gordon, 1 Pick., 308.

And generally "whenever a corporation is acting within the scope of the legitimate purposes of the corporation, all parol contracts made by its authorized agents are express contracts of the corporation; and all duties imposed upon them by law, and all benefits conferred at their request, raise implied promises, for the enforcement of which an action will lie." Danforth v. Sco. Turnpike Co., 12 Johns. R., 230; Dunn v. Rec., War., etc., St. Andrew's Ch., 14 John. R., 118–19; Patterson's Heirs v. B'k Col., 7 Cranch, 306.

And municipal corporations are responsible "in the same manner as other corporations, and private individuals are responsible on their promise, express or implied." See syllabus Clark v. City of Washington, 12 Wheat., 40; Ross v. City of Madison, 1 Carter, 283; The City of New York v. Bailey, 3 Hill, 531; Ib., 2 Denio, 433; Goodloe v. City of Cincinnati, 9 Ham., 513; Rhodes v. Cleaveland, 10 Ohio R., 159; McComb v. Town of Akron, 15 Ohio R., 479; and the numerous cases cited in these authorities.

To show that there is no distinction between corporations and natural persons, where an implied promise to pay is sought to be raised, the following authorities are cited : 7 Greenleaf, 96, Abbott v. Third School-District in Herman; Episcopal Church Society v. Episcopal Church in Dedham, 1 Pick., 373; Proprietors of Canal Bridge v. Gordon, 1 Pick., 308; Danforth v. Sco. Turnpike Co., 12 Johns. R., 230; Denn v. Rec. War., etc., of St. Andrew's Ch., 14 Johns. R., 118–19; Patterson's Heirs v. Bank of Columbia, 7 Cranch, 306.

The work of Angell & Ames, though purporting to treat merely of private corporations, yet, when speaking of the matter now under discussion, cites cases of municipal and private corporations indifferently, to sustain the positions taken. (§ 379.)

In Stafford v The Corporation of Albany, (6 Johns. R., 1,) it was held that assumpsit would lie against the corporation on an implied promise to pay the amount of damages, assessed by a jury, for the land of the plaintiff, taken by the corporation. This point, it is true, was not raised in the case, nor specially passed on by the Court—both counsel and Court seeming to have taken it for granted that implied assumpsit would lie.

The case of The Overseers of North Whitehall v Overseers of South Whitehall, 3 Serg. and Rawle, 117, shows that the same rule applies in Pennsylvania. In this case both parties were municipal corporations; yet, it was held, that implied assumpsit would lie to recover the expenses of a town pauper, which had been paid by the plaintiff for the benefit of the defendant.

The rule contended for was upheld in The Baptist Church v. Mulford, 3 Halsted R., 182.

Actions on an implied assumpsit have, in almost innumerable instances, been sustained against religious corporations. The

case of Smith v. First Congregational Meeting-house, 8 Pick., 177, is one of the many instancess which might be enumerated. And religious corporations, in their chief scope and aim, the general welfare and prosperity of the community, appear to resemble municipal corporations more closely than they do private corporations.

The case of Brady v. The Mayor, etc., of Brooklyn, 1 Barb. Sup. C. Rep., 584, is our very case, not only as respects the form of the action, but also the principle on which we seek to charge the defendant. The declaration contained the common counts for work and labor, and materials, together with the money counts, and an account stated, being the same in substance as our complaint. The plea was the general issue—the same as the answer of the defendant. There was no proof, on the trial, of any ordinance authorizing the indebtedness for which the plaintiff brought his action. The claim was purely of an equitable nature; but it arose under circumstances, which, if the action had been against an individual, would have warranted a recovery upon an implied assumpsit. And the Court held that such recovery might be had in that case. And yet the defendant was a city corporation—a municipal corporation. The Court resolved, in effect, in their opinion and by their judgment:

1. That corporations have all the powers of ordinary persons, as respects their contracts; except where they are restricted, expressly, or by necessary implication.

2. Whenever a corporation is acting within the scope of the legitimate purposes of its institution, all its contracts, whether sealed or unsealed, written or by parol, are valid.

3. That subsequent acts of the corporation might operate as a ratification of a claim which had originated without any authority.

4. That after such acts of implied ratification, the corporation could not shield itself from responsibility, by denying its liability, and by contesting the claim in a suit brought to recover it. And these principles are laid down and approved in a suit, too, in which, as has been said, the defendant was a municipal corporation.

The Supreme Court of Pennsylvania, in the case of a municipal corporation, Alleghany City v. McClarken & Co., 14 Penn. State Rep., 81, place this view of the question in a clear and proper light. The case is, in fact, decisive of the case at bar. Mr. Coulter, J., says, "I take it for granted that it (the charter of the city,) contains no express authority to the corporation to issue such notes as those embraced in this action." These were small notes, issued for circulation as money at the time, and there was a statute expressly prohibiting the issuing of such notes. "But," continues the Judge, "it does not follow, that the corporators are not answerable for them in their corporate

capacity. They have received value for them in the various public improvements erected and made in the city, through their instrumentality, and it hardly comports well with fair dealing, that they should seek to exonerate themselves from a debt, on this account, contracted by them through their accredited agents, and with their silent acquiescence. It is not universally true, that a corporation can not bind the corporators beyond what is expressly authorized in the charter. There is a power to contract, undoubtedly, and if a series of contracts have been made, openly and palpably within the knowledge of the corporators, the public have a right to presume that they are within the scope of the authority granted."

The true rule, as adopted and practiced in the United States, is undoubtedly laid down in Bulkley v. Derby Fishing Company, 2 Conn. Rep., 254. Swift, Ch J., says: "A corporate act is not required in all cases. It is sufficient if there be a usage and practice under such circumstances as may be presumed to be within the general knowledge and by the consent of the company. If any officer vested with certain powers should, in any instance, violate them, and attempt illegally to subject the corporation to any obligation, such corporation may, instantly, on discovering, disavow the act, and prevent a repetition. And, then, as there will be neither law nor usage to sanction the transaction, it will not be binding. But when the corporation will suffer such practice to continue, it is presumed that it is done with their consent, and be made obligatory upon them." 2 Conn. Rep., 255.

Mr. Justice Hosmer observes, in the same case: "More than a century ago, the case of Rex v. Biggs, 3 P. Wms., 419, went the full length of deciding that, as against a corporation, an authority to its agents different from the prescriptions of its charter might be implied. Although this decision has, on some occasions, been lost sight of, yet it has been abundantly recognized by modern determinations, and is unquestionably established." 2 Cranch, 168; 2 J. R., 114. The cases cited by Hosmer, J., which he claims have departed from the correct rule, are the very cases on which the counsel for the defendant relies.

"I consider it undoubted law," continues Mr. Justice Hosmer, in the same case, "that a corporation may incur a liability different from the prescriptions of its charter. Like individuals, it is responsible in the manner in which it permits its agents to hold it out to the world. The corporation should disavow the practice or usage of its agents in the transaction of business, or they shall be presumed to have its sanction. An authority to contract in a particular mode may be proved by a vote of the stockholders, and in prevention of fraud and prosecution of justice it may be presumed. It may be implied, from the acquiescence in the usual mode of transacting the busi-

ness of the corporation, and expressing no objection to it, for *qui non prohibit cum prohibere possit, jubet.*"

In the same case, Mr. Justice Gould expresses similar views in an able opinion. The attention of the Court is invited to the entire case, as containing a lucid exposition of the rules of law applicable to the liability of corporations, where they depart from the rigorous requirements of their charters. White *v.* Derby Fishing Company, 2 Conn. R., 261, is also to the same effect.

3. Under the circumstances of the case, and the state of facts found by the referee, the defendant is estopped from denying its liability.

The rule in regard to estoppel is thus correctly laid down by Judge Parsons, in his work on Contracts, (vol. 1, p. 118.) "In general, if a person not duly authorized make a contract on behalf of a corporation, and the corporation take and hold the benefit derived from such contract, it is estopped from denying the authority of the agent."

In Selma and Tenn. R. R. Co. *v.* Tipton, 4 Alab. R., 808, it is held that "not only estoppels, technically so called, but estoppels in pais, operate both for and against corporations."

And that municipal corporations are responsible in the same manner as other corporations and private individuals, see authorities cited above, and particularly Clark *v.* The City of Washington, 12 Wheat., 40; Ross *v.* City of Madison, 1 Carter, 283.

"Matter in pais, as I understand the phrase, is where some admission has been made—or some act done or acquiesced in— or some party has permitted an act to be done for his benefit, knowing the fact, without objection—or has failed to speak out when he ought to have done so, and by reason of the same another party has been induced to part with some advantage, or, in some respect, to change his position." Dezell *v.* Odell, 3 Hill's R., 219, 221; 1 Greenl. Evid., § 207.

Now, in the case at bar, there is matter in pais. There is a practice of furnishing the city with certain necessaries, as old as the city itself. Lights, for the same purposes, have always been furnished upon the same authority and in the same manner, and down to the introduction of gas, paid for by the city. The bills were duly presented to the city with the terms specified, through the officers prescribed by the charter and ordinances. as the medium of communication, and for a long time were audited and allowed monthly, and warrants were regularly issued by the officers who were expressly charged with this duty by the charter and ordinances. And the gas-fixtures were paid for by the city, and the city enjoyed the benefit for a long time, with knowledge and without objection.

*F. M. Haight* for Respondent.

1. If a defendant has neither knowledge or information, he can not have any belief, and need not express any. Such is the rule in chancery, from which this part of the Code is taken. Morris v. Parker, 3 John. Chan. Reps., p. 297. In this case it is said: "When a defendant answers that he has not any knowledge or information of a fact charged in complainant's bill, he is not bound to declare his belief one way or the other." He can not have any belief, if he has neither knowledge or information, and the Practice Act, when it requires an answer upon information or belief, means no more than if a defendant has information upon the matter, he shall state his belief, but if he denies all knowledge and information, it is neither required by the act, nor by any known rules of pleading, or by common sense, that he should state his belief. The forty-sixth section of the Practice Act requires either an absolute denial, or a denial upon information and belief. In this case there is an absolute denial. The defendant states that the defendant has no knowledge or information, and therefore denies, etc. The reason for the denial may be stricken out, and the absolute denial remains. The mistake of the appellant's counsel is in supposing the act required, in all cases, a denial on information and belief. It does not require any such averment. It requires either a denial, or a denial on information or belief.

2. The second objection is, that the answer being general, the allegations of the second count are admitted, and that entitles plaintiff to a judgment. This is a *non sequitur.* If all the allegations are admitted, the plaintiff is not entitled to any judgment on this count. There are no specific allegations within the meaning of the statute, as was the case in Anderson v. Parker. There is a general allegation of having furnished gas to defendants, and that, in consideration thereof, defendant promised to pay, etc. These are general allegations, like any common count, and is not the case where a specific allegation, necessary to the action, requires a specific denial. General allegations may be met by a general denial. But there really is no dispute about the facts.

3. The defendant is a corporation, and can not answer under oath. In this State our Code has always been construed in reference to the old analogies. See ıst Barbour's Chancery Practice, p. 156.

4. Municipal corporations have no powers except those granted, or such as are necessary to carry into effect powers granted. Bacon's Abridgement, Tit. Corporation, letter D., ed. of 1854. "A corporation is a creature of the charter that constitutes and gives it being, and prescribes bounds and limits to its operations, beyond which it cannot regularly proceed." See the numerous authorities cited in notes. Kent's Com., vol. 2, p. 298; Halsted v. Mayor of New York, 3 Comstock, 430, and the case there re-

ferred to of Hodges v. The City of Buffalo, 2 Denio; 1 Duer, 505; 4 Sanford, 421–22; Conn. R., 552, New London v. Brainard.

Assuming this proposition to be correct, it follows that a municipal corporation can contract only in the mode, and for the objects, specified in the charter. It has no general ability, like a natural person, but having only the capacity to contract for specified objects, and in a certain specified mode, its contracts are void, unless within the powers granted, both as to the subject of the contract, and manner of its creation and execution. Smith's Commentaries, § 677, p. 790.

5. Municipal corporations are governmental agencies, and the Mayor and Common Council of the City of San Francisco, under the charter of 1851, had, within certain defined limits, power by legislation to make contracts for various purposes, and to control and set in motion the executive branches of the government. In this case, the claim is for gas furnished without any action of the common council, but upon an implied ratification. The plaintiff has appealed, because a portion of his claim was rejected, and the point is presented, whether a government or quasi government, as a municipal corporation, can contract in any other manner, or become liable in any other manner than in accordance with its organic laws.

The case of Phelan v. The County of San Francisco, 6 Cal. R., 536, covers the point, and is conclusive. The argument as to the analogy to be drawn from the liability of municipal corporations for torts is well explained, in the case of Bailey v. The Mayor, etc., of New York, 3 Hill, p. 540. This case, and the authorities referred to, will illustrate the whole of this class of cases.

Where powers are granted for public purposes, they can only be exercised in the mode and manner prescribed. It is also equally true that a municipal corporation, as to its property, is to be regarded as other corporations, and its private rights are upon the same footing.

At the October Term, 1857, BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This was a suit to recover from the defendant compensation for gas furnished by the plaintiff. There are two counts in the complaint; the first, upon a written contract, and the second, a common count for gas. The answer of defendant to the second count was this:

"And this defendant further answering saith, that this defendant has no knowledge or information in relation to the allegations in the second count; and, therefore denies the same."

The case was referred, by consent, to a referee, who reported a judgment for the plaintiff upon all the counts. The report of the referee was set aside as to the judgment upon the second, and the plaintiff appealed.

It is insisted by the plaintiff, that the answer of the defendant to the second count made no issue.

The complaint being verified, the answer must contain a specific denial to each allegation of the complaint controverted by the defendant, or a denial thereof, according to his information and belief.

The plaintiff makes two objections to this answer; *first*, that it does not deny the allegations of the complaint, according to information and *belief*, but simply alleges a want of knowledge or information; *second*, that the facts alleged in the second count of the complaint are of such a character, that the defendant must be presumed to know whether they are true or false, and can not be permitted to answer in the manner stated.

The second count alleges that the plaintiff, at the request of the defendant, furnished to said defendant a large quantity of gas for lighting the city-hall and fire-engine-houses belonging to defendant; that the gas was used and consumed by defendant, and was furnished from November, 1854, to June, 1856, and was worth the sum of $18,188 98-100.

In the case of Thorn & Maynard v. The New York Mills, (10 Howard's Pr. Rep., 19,) it was held that when the facts alleged were presumptively within the defendant's knowledge, he must admit or deny positively, unless there be something special in the circumstances of the case. Justice Bacon, in delivering the opinion of the Court, says:

"And, therefore, the true distinction to be observed in determining when a defendant may avail himself of the privilege accorded to him, of answering in the qualified form allowed by the Code, and when he must positively admit or deny the allegation, is to inquire whether the fact alleged is presumptively within the defendant's knowledge." The suit in that case was upon a promissory note, alleged to have been made by the defendant, and it was held that the answer must be in the form positive.

When, from the nature of the fact alleged, it must be presumptively within the knowledge of the defendant, the answer should be positive, one way or the other; and a denial, according to his recollection, will be considered as an evasion. (Taylor v. Luther, 2 Sum., 228.) But when the fact is not presumptively within the knowledge of the defendant, then a denial of all knowledge and information upon the subject is amply sufficient. It is unnecessary for the party to deny that he has any belief in reference to the fact, when he has already denied all knowledge and information from which a belief could be formed.

But the question arises, whether the rule should apply to municipal corporations. That it should apply to other corporations there would seem to be no doubt. There is, however, a marked distinction between the two kinds of corporations. This dis-

tinction is stated in the opinion of this Court, in the case of Holland v. The City of San Francisco, (April, 1857.) A municipal government is, in fact, a part of the State government, exercising subordinate legislative powers over a certain community, within a defined district; and the ends contemplated by its creation are different from those intended by other corporations. The same rule, therefore, can not be applicable to them in reference to this question. Suppose the Legislature should pass an act permitting suits to be instituted against the State, it would hardly be contended that this rule would apply to her officers. The business of a city so large as San Francisco, requiring so many ordinances as to form a large volume, is too extensive and complicated to justify the application of this rule to its officers. The officers are changed every year, and it would be too difficult for the new incumbents to inform themselves of all past transactions. A party who deals with the officers of a municipal corporation should see that they had authority to bind the corporation.

We think the answer in this case sufficient, and that there was no error in the decision of the Court below.

Judgment affirmed.

At the same term a re-hearing was granted, and at the present term, Field, J., and Burnett, J., delivered separate opinions in the case.

Field, J.—This case was before this Court at the last October Term, and the judgment of the Court below was then affirmed. A re-hearing having been granted, the appellants contend that they are entitled to recover the amount claimed in the second count upon the pleadings, and also upon the merits of the case, as disclosed by the report of the referee.

On the first hearing it was held by my associates that the answer was sufficient to raise an issue; and, that the rule which requires a defendant to answer positively as to the facts alleged in a verified complaint, which are presumptively within his own knowledge, does not apply to municipal corporations. I did not then concur in the opinion of my associates. I do not concur now. I think the answer fatally defective in not denying any of the allegations of the second count, either positively or according to information and belief; the only forms in which the allegations of a verified complaint can be controverted so as to raise an issue. A denial in any other form is unknown to our system of practice, and can not have any legal effect. The answer is that the defendant has "no knowledge or information" in respect to the allegations of the second count, "and therefore denies the same." But the statute imposes upon the defendant, if a natural person, and if a corporation, upon its officers and

agents, the duty of acquiring the requisite knowledge or information respecting the matters alleged in the complaint, to enable them to answer in the proper form. Such knowledge or information will be obtained before trial, if a defence is interposed, and there is no good reason why it should not be obtained before answer. In the case at bar, the facts alleged are presumptively within the knowledge of the officers of the corporation, and the denial should have been made positively. Any other form of denial in such cases is an evasion of the statute. In the opinion referred to, the general rule is admitted, but municipal corporations are excepted from its operation. I am unable to find any authority for the exception. The statute makes no distinction between the rules of pleading applicable to natural persons and those applicable to artificial persons. It does not give one rule to determine the effect of a pleading when the defendant is an individual, and another and different rule when the defendant is a municipal corporation. It prescribes certain requisites to good pleading, and certain consequences to bad pleading; and corporations are not exempted from its provisions. By the rules it gives, is the sufficiency of the pleadings to be judged. Its language is: "All the forms of pleading in civil actions and the rules by which the sufficiency of the pleadings shall be determined, shall be those prescribed by this Act." (Prac. Act, § 37.)

In Thorn et al. v. The New York Central Mills, (10 How., 20,) the complaint was upon a promissory note, alleged to have been executed by the defendant, (a corporation,) to the plaintiffs, by an agent duly authorized, and was verified. The defendant put in the following answer, verified by one of the directors of the company: "This defendant has *no knowledge or information* sufficient to form a belief, that it did at the time, for that purpose stated in the complaint by its authorized agent, make its promissory note, by the name and for the amount, as in this respect set forth in said complaint, or that it is indebted to the said plaintiffs upon such a note as is in the said complaint mentioned." A question as to the sufficiency of this answer was raised, in the decision of which Bacon, J., of the Supreme Court of New York, laid down the rule above stated, and held it equally applicable to corporations as to individuals. "A corporation," says the Justice, " is as much bound to know whether it has entered into contracts, made purchases, given promissory notes in the course of its business, and by its appropriate agents, as an individual. I have serious doubts, indeed, whether a corporation is permitted to answer in any case in the form adopted in this cause. How can ———, an individual director, know that "it" (the corporation, as it is styled in the answer,) has no knowledge, information, or belief, in the premises? The intangible, incorporeal entity may not have, and such a thing is not predicable of a cor-

poration, but *non constat* that some other director or officer may not have all the knowledge or information necessary to form a full and perfect belief. Where is the agent who gave the note, where the bill-book of the company, or the appropriate entries to show the transaction out of which the note may have sprung? * * * I hold, therefore, that in this case the defendant was bound to know, or, at least, to inquire, and thus gain the information as to the fact of the existence of the note in question in this suit, and that the company are not at liberty to answer otherwise than by an explicit admission or denial of the giving of the note."

The case above is one of three cases brought against the same defendant upon promissory notes, in each of which the same answer was filed; and in each the same decision was rendered and an appeal taken to the general term of the Supreme Court. The case on appeal is entitled " Shearman *v.* The New York City Mills," and is reported in 1 Abbott, 187. The Court held the answer insufficient, and said :

" If a corporation may answer in this manner in one case, it may in all cases. It is, from its nature, under the necessity of acting by agents. If, therefore, it were endowed with all the faculties of a natural person, it would have no actual knowledge of any facts.

" It could, therefore, in all cases, deny knowledge or information. But a corporation is an artificial being, which, from its nature, can have no knowledge or belief on any subject independent of the knowledge or belief of its agents. It is a mere legal entity. It neither knows nor thinks. If, therefore, this method of denial on the part of the corporation in this case be correct, a corporation cannot be compelled in any case to admit or deny any allegations, even those of its own organization. It can not be possible that the Legislature intended to grant to them any such dispensation."

These cases establish the position that, in pleading, the same rule must prevail with corporations as with individuals. The defendant, it is true, was a private corporation, and the opinion limits the exception in the application of the rule above mentioned to municipal corporations, assigning as the reason, the distinction between the two corporations stated in the case of Holland *v.* The City of San Francisco. The distinction alluded to refers to the double character of a municipal corporation ; its public and political character, in which it exercises subordinate legislative powers, and its private character, in which it exercises the powers of an individual or private corporation. The very distinction, it appears to me, dissipates the exception taken, at least so far as the case at bar is concerned. It is admitted that the rule of pleading, for which I contend, is applicable to private corporations. The purchase of gas involves only the exercise of

a power of a private corporation; it requires no exercise of any political power. It is as much an act of a private character as if made by a private corporation. In truth, a municipal corporation, outside of its governmental capacity, is, in many respects, to be regarded the same as a private corporation, and its officers and agents through whom it acts must be presumed to know the contracts it enters into, the purchases it makes, and the property it uses. The knowledge of such matters must rest with some of its officers, and the corporation ought not to be permitted to shelter itself under an assertion of ignorance.

Having stated the reason for dissenting from the former opinion of my associates, I proceed to consider the case on its merits. The facts, as reported by the referee, are not disputed. From them, it appears that the plaintiff furnished the gas, according to the allegations of the second count of the complaint, amounting in value to the sum of $18,188; that the gas was consumed in lighting the city-hall and fire-engine-houses belonging to the corporation; that it was furnished and used nightly for that purpose, from November, 1854, to June, 1856; that bills for the same were rendered monthly to the common council, and those previous to June, 1855, were audited and allowed, and the comptroller directed to issue his warrants upon the treasury therefor; that such warrants were accordingly issued and delivered to the plaintiff, but not being paid were returned and canceled, and the bills remain unpaid; that it was necessary to the efficiency of the fire department that the engine-houses should be lighted, and necessary for the convenience of the officers of the city in the discharge of their respective official duties, and for the due administration of the city government that the city-hall should be lighted; that the gas was used in the chambers of the common council during its sittings, in the offices of the mayor, comptroller, treasurer, police officers, and other public offices, whilst occupied by the mayor and other officers of the city, in the discharge of their official duties; that the gas was lighted and extinguished from time to time, by the officers themselves, or by their direction; and the meters and fixtures by means of which the gas was furnished and used in the city-hall and engine-houses, were put up and paid for by the corporation.

Upon these facts, the appellant asserts a right to recover against the defendant for the gas furnished. The respondent denies the right upon the sole ground that there was no evidence of any ordinance of the common council authorizing the furnishing of the gas. The proposition of the respondent is that a municipal corporation can incur no liabilities otherwise than by ordinance. The position, in its full extent, is not tenable. Under some circumstances, a municipal corporation may become liable by implication. The obligation to do justice rests equally upon it as upon an individual. It cannot avail itself of the prop-

erty or labor of a party, and screen itself from responsibility under the plea that it never passed an ordinance on the subject. As against individuals, the law implies a promise to pay in such cases, and the implication extends equally against corporations. This is as well established by the authorities as any principle of law can be.

In Abbott v. The Inhabitants of the Third School-District in Herman, (7 Greenl., 96,) a school-house had been built under contract with persons, who assumed without authority to act as a district committee, but yet as a school was afterwards kept in it by direction of a school-agent, it was held that the building was accepted by the district, and that the inhabitants were bound to pay its reasonable value. The Court, in its opinion, says: " If one accepts or knowingly avails himself of the benefit of services done for him without authority or request, he shall be held to pay a reasonable compensation for them. So, in the present case, the same principle may be applied."

In Ross v. The City of Madison, (1 Carter, 281,) it was contended that the city was not liable, because no contract had been made by it for the construction of a certain culvert, which had occasioned the injury for which the suit was brought. The Court below instructed the jury that if they found that certain evidence adduced before them constituted all the written evidence tending to prove that the defendant authorized the construction of the culvert, they must find for the defendant. The Supreme Court held the instruction wrong, and in its opinion said : " It is well established that the contracts of corporations rest upon the same footing as those of natural persons, and are valid, without seal, whether expressly made by the corporation, or arising by implication from the general relations of the agent towards the corporation, or from the ratification of acts done on behalf of the corporation by parties assuming to act as agents, although without sufficient authority."

In The Overseers of North Whitehall v. Overseers of South Whitehall, (3 Sergt. & Rawle, 117,) it was held that implied *assumpsit* would lie to recover the expenses of a town pauper, which had been paid by the plaintiff for the benefit of the defendant. It was contended that the corporation was not liable to an action unless bound by a contract under its corporate seal, as in the present case it is contended that the defendants are not liable unless bound by ordinance. The objection in the two cases is the same in principle, as the ground of the objection is, that the consent of the corporation has not been given in the requisite manner. To this objection, Tilghman, C. J., said : " This point has been so much discussed, and so well settled, in other Courts, that I shall not go over the ground again, but content myself with expressing my opinion that the action may be supported on an implied contract, and with referring to the cases

of Bank of Columbia v. Patterson, (7 Cranch, 299;) Danforth v. The Schoharie Turnpike Company, (12 Johns., 227;) and Hayden v. The Middlesex Turnpike Company, (10 Mass. R., 397.)"

In Alleghany City v. McClarkin & Co., (14 Penn., 81,) the plaintiffs claimed to recover the amount of certain small notes, or city-scrip, issued by the defendants, and the question was presented, whether the common council of a city, a municipal corporation, could subject their constituents to the penalty of the act of the Legislature forbidding the issuing of small notes as a circulating medium. The Court, per Coulter, J., said: "The Charter, or Act of Assembly, incorporting the city of Alleghany, was not produced or read on the argument; but I take it for granted that it contains no express authority to the corporation to issue such notes as those embraced in this action. But it does not follow that the corporators are therefore not answerable for them in their corporate capacity. They have received value for them in the various public works and improvements erected and made in the city, through their instrumentality, and it hardly comports well with fair dealing, that they should seek to exonerate themselves from a debt on this account, contracted by and through their accredited agents, and with their silent acquiescence. It is not universally true that a corporation can not bind the corporators beyond what is expressly authorized in the charter. There is power to contract, undoubtedly, and if a series of contracts have been made openly and palpably within the knowledge of the corporators, the public have a right to presume that they are within the scope of the authority granted. * * One rule of law is often met and counterchecked by another of equal force, so that although the corporators are, in general, protected from unauthorized acts of their agents, yet, at the same time, a rule of equal force requires that they should not deceive the public, or lead them to trust and confide in unauthorized acts of their agents. If they receive the avails and value of those acts, it is implicit evidence that they consented to and authorized them. They adopt the act, and are responsible to those who, on the faith of such acquiescence and approbation, trusted their agents."

The reasoning of the Court, in this case, is applicable to the facts of the case at bar. The defendant has received the benefit of the plaintiff's labor and materials for over a year and a half, and it ill comports with fair dealing that it should now seek to exonerate itself from liability, and the law will fail to effect its true end, if the defence interposed can prevail. The position contended for by the respondent, it is believed, is asserted in this State for the first time. The reports in other States are full of adjudged cases where actions upon implied contracts have been sustained against municipal corporations. They have been argued by able and distinguished counsel, and decided by eminent

Judges, and the distinction has never been made between the liability of a private corporation and a municipal corporation, under circumstances analogous to those presented in the case at bar. Thus, in Clark *v.* The City of Washington, (12 Wheaton, 40,) the action was founded on an implied *assumpsit* to pay the amount of a prize drawn by a lottery-ticket for which the plaintiff claimed the city had made itself liable, in consequence of the acts of its agents and officers. Mr. Webster and the Attorney-General, Mr. Wirt, in the course of their argument, used the following language : " Where special duties are imposed upon corporations, which can only be performed through the instrumentality of their agents, the law will raise an implied *assumpsit*, under the same circumstances as in dealings with private individuals. It is enough to show a ratification of the acts of the agents, *by receiving the benefit of the acts*, or otherwise. In short, they are responsible, under these circumstances, for their promises, whether express or implied, in writing or by parol." The correctness of this position was not even questioned by the opposing counsel, and the point was not deemed of sufficient doubt to be noticed by the Court, in its decision; and judgment was ordered for the plaintiffs.

In Powell *v.* Trustees of Newburgh, (19 John., 284,) the action was brought to recover the expenses incurred by the trustees in the defence of an action brought against the corporation for discontinuing and obstructing a street. There was no contract in the case, except the implied contract which the law raised from the circumstances, yet the Supreme Court of New York held the plaintiff entitled to recover.

In Brady *v.* The Mayor, etc., of Brooklyn, (1 Barb., 584), the recovery was upon an implied *assumpsit*. There was no proof of any ordinance authorizing the indebtedness for which the action was brought.

Cases *ad infinitum* might be cited showing a general recognition in the Courts of the several States of the doctrine that municipal corporations, like individuals, may, under some circumstances, be held upon implied contracts. A corporate act is not essential in all cases to fasten a liability, and if it were necessary the law would sometimes presume, in order to uphold fair dealing and prevent gross injustice, the existence of such act, and estop the corporation from denying it.

Where the contract is executory, the corporation cannot be held bound unless the contract is made in pursuance of the provisions of its charter; but where the contract has been executed, and the corporation has enjoyed the benefit of the consideration, an implied *assumpsit* arises against it. It will be presumed, for the purposes of justice, that the authority exercised by the officers of the corporation was properly delegated to them, and that contracts made by them without authority, have been ratified. " If offi-

cers of the corporation," says Story, J., in Bank of U. S. v. Dandridge (12 Wheat., 70,) "openly exercise a power which presupposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful, and the delegated authority will be presumed. * * In short, we think that the acts of artificial persons afford the same presumptions as the acts of natural persons. Each affords presumptions from acts done of what must have preceded them as matters of right, or matters of duty."

But not merely as I have stated will such presumptions be indulged; the corporation, in order to prevent injustice, will be estopped from denying the authority of its agents. "In general," says Parsons, in his work on Contracts, "if a person, not duly authorized, make a contract on behalf of a corporation, and the corporation take and hold the benefit derived from such contract, it is estopped from denying the authority of the agent." The doctrine applies equally to municipal as to private corporations.

I am of opinion that the order modifying the report of the referee should be set aside, the judgment entered on the eighteenth of March, 1857, be reversed, and that the judgment entered on the twentieth of January, 1857, should stand as the final judgment in the cause.

Ordered accordingly.

BURNETT, J.—Upon a re-argument, and a more careful examination, we are satisfied that our former opinion was erroneous.

We have lately held, in the case of Humphreys and others v. McCall and others, and Curtis v. Richards and Vantine, that there were but two forms in which the defendant can controvert the allegations of a verified complaint. In both of these forms, the denial of each controverted allegation must be specific. The statute is without exception. A specific denial of each allegation is a separate denial, applicable only to the particular allegation controverted.

The answer in this case gives rise to two questions:

1. Can a defendant excuse himself from a specific denial of each controverted allegation by stating that he has no knowledge or information in relation to the allegations of the complaint?

2. Conceding that he can not, does this rule apply to municipal corporations?

In reference to the first question, we may remark that the New York Code provides that the answer shall contain "a general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief." (Voorhies' Code, p. 163, 5th ed., 1857.) Under our Code, as it was originally framed in 1850,

and as amended in 1851, the defendant might put in issue the allegations of the complaint by a denial of any knowledge thereof sufficient to form a belief. But this section was amended in 1854. As it now stands, the denial must be in one of the only two forms given. Under the act of 1850, the denial could be " according to information and belief, or of any knowledge thereof sufficient to form a belief." The section as amended has left out the latter portion of the section as it formerly stood, and has *thus* cut off the privilege of a denial of any knowledge sufficient to form a belief. This change in the language of the section must have been intended to secure a specific denial of each allegation.

It would seem, on first reflection, to be idle for the Code to require the defendant to deny *specifically*, according to his information and belief, when he states in his answer he has *no information, and, of course, no belief*.

But this conclusion, though apparently very clear, is not correct. When the facts alleged in a verified complaint are presumptively within the knowledge of the defendant, the Code requires his denial to be *specific*, not general. The object of the provision is to call the attention of the defendant, and to confine each denial to one allegation at a time, and not permit him to deny all at once. Under the equity practice the complainant usually annexed interrogations to his bill for the purpose of sifting the conscience of the defendant. Our system intended to accomplish the same result by requiring the plaintiff first to state the *facts* that constitute his cause of action, and then of the defendant, a specific denial of *each* allegation. The same reason which requires the defendant to be specific in this case, would equally require the denial to be *specific* where the facts are not presumptively within the knowledge of the defendant. The plaintiff may state in his complaint a number of facts, some of which the defendant could not specifically deny, according to his information and belief. But if he be permitted to make a sweeping denial, upon the ground 'that he has no information, he avoids the responsibility of denying each separate allegation. He may have information in reference to one of a number of alleged facts, and as to that *one* he believes it to be true; but if permitted to deny *generally*, he would be strongly tempted to say he had no information as to the facts alleged, and, therefore, denied the same. The object of the Code was to require a specific denial of the allegations of a verified complaint in all cases, without exception. This must have been the intention of the Legislature in amending the section. The object of the Code was to narrow the proofs upon the trial; and. to accomplish this end, the plaintiff was allowed to verify his complaint, and thus compel the defendant to deny specifically each separate allegation.

As to the second question, we are satisfied upon more mature

reflection that although there may exist the best reasons for a different rule of pleading when a municipal corporation is a defendant, we can make no distinction, because the Code makes none.    It is a matter for the Legislature, and not for the Court. The thirty-seventh section of the Code provides that "all the forms of pleadings in civil actions, and the rules by which the sufficiency of the pleadings shall be determined, shall be those prescribed in the act."    The Code prescribes that the answer to a verified complaint shall be in one of two forms, in all cases, without any exception, and we cannot make one when the law has not made it.

We might be disposed to permit the answer to be amended, were we not fully satisfied of the intrinsic justice of the plaintiff's claim.    The defence of the city is purely a technical one, and as it was not made in a technical manner, it should fail. For these reasons I concur in the judgment specified in the opinion of Judge Field.

TERRY, C. J.—I dissent.