MEMPHIS (APPERSON v.). See Case No. 497.

MEMPHIS (BROOKS v.). See Case No. 1,-954.

---

## Case No. 9,415.

### MEMPHIS v. BROWN (two cases).

[1 Flip. 188; 6 West. Jur. 495; 5 Am. Law T. Rep. 424; 11 Am. Law Reg. (N. S.) 629.] [1]

Circuit Court, W. D. Tennessee. March, 1872.[2]

MUNICIPAL CORPORATIONS — CONTRACTS — CONDITIONS PRECEDENT — PAYMENT — INTENTION OF PARTIES—UNREASONABLE CONTRACT — MEASURE OF DAMAGES—NEGOTIABLE BONDS.

1. When contracts have been made, acts done, and labor performed in pursuance of a construction of a city charter, acquiesced in by all its citizens, such an interpretation will be sustained if justified by any possible reading of the statutes.

2. In reference to all acts which a municipal corporation has power in any mode, and by any agency, to perform, it may bind itself by those agents whom it suffers to act for it, and in the modes which it sanctions by its own usages.

3. Where the charter prescribes votes of shareholders, citizens or directors, or other formalities as conditions precedent to the performance of acts, and such acts are performed without such formalities, third persons acting in good faith may presume all has been done which the charter demanded, and the corporation will not be suffered to prove its own negligence or willful dereliction to defraud innocent parties of their labor, property or money.

4. A municipal, like a private corporation, may in the ordinary course of its government, and in the conduct of improvements it is its duty to execute, make promissory notes, bonds, guaranties, and all other agreements necessary or convenient for the economical and proper financial management of its affairs as fully as a natural person.

[Cited in Memphis v. Bethel (Tenn.) 17 S. W. 194.]

5. The mayor, city attorney and treasurer of the corporation having ordinarily been suffered to make similar agreements, may engage attorneys to collect demands due the municipality, when its interests demand such service.

6. If the service is in a suit in which the city is a party, or in which it is interested, and they are performed with the knowledge of the officials, it is liable for the services in the same manner as a natural person. Judgments holding the contrary depend upon statutes which expressly prohibit such retainers.

7. A guaranty of payment imposes an obligation to pay at the maturity of the security, and the holder need not wait the result of a suit against the principal debtor, but may demand the money from the guarantor immediately upon the dishonor of the paper.

8. The payment of a less sum is not a sufficient consideration for an agreement to discharge a greater, but the Code of Tennessee alters the common law rule, and enforces such contracts when in good faith fully performed according to the intention of the parties.

9. When an agreement is made by a debtor to deliver in full satisfaction of a large sum due, his notes or money for a less sum, even though there is a consideration for the agreement, it

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 11 Am. Law Reg. (N. S.) 629, gives only a partial report.]

[2] [Decree modified in 20 Wall. (87 U. S.) 289.]

must, in order to operate as a discharge, be fully and fairly performed in all its parts, both in time and amount.

[See Bank of North Carolina v. Dewey, Case No. 897.]

10. Equity will not enforce the performance of unfair or hard or unreasonable contracts.

11. In order to sustain a contract of settlement without other sufficient consideration, upon the ground that it was the compromise of doubtful claims, the doubt must be such as would arise in the mind of an ordinarily intelligent person familiar with the class of things which is the subject of the settlement.

12. The measure of damages for the non-payment of money, or the non-delivery of a debtor's obligations for money, is the amount due and interest, and as an almost universal rule, no collateral damages can be given.

13. If negotiable bonds, of a class which by the usage of trade, are vendible in market at established rates, are to be issued in payment, accompanied with a sinking fund to give them greater market value, such bonds are to be treated as if they were chattels and things in esse, and the damages for failure to provide the fund will be the difference between the value of the bonds as they were agreed to be made, and the value as they were in fact made.

Suit at law was originally brought by [T. E.] Brown & Co. in this court for paving; subsequently the city filed its bill in equity against Brown & Co. in the state court, on the same contracts, to restrain certain collections by Brown & Co., and for an accounting. This suit the defendants removed to this court, and by consent of parties the subject of the action at law was by cross-bill united with this suit. The action is based upon two contracts made by the city with the assignors of Brown & Co., for street paving. Under the first, paving at the intersections of streets and alleys and opposite public ground, was to be paid for in cash by the city, and that opposite lots of private owners, by such owners, on bills to be made out by the city engineer, one-half when each section of 400 feet was done, and the other half, in installments, due in thirty, sixty and ninety days, the payment of which the city guaranteed. Under the second contract, the whole work was payable by the city, as each such section was done, in 6 per cent. coupon city bonds, running five, ten and fifteen years, guaranteed by a sinking fund. [Bonds were delivered for the work done, and were sold by the contractors to prosecute the work; but the city established no fund for their payment, nor paid the interest on them, and the bonds sold at the price of other unsecured city bonds, which was less than a sinking fund bond would have brought, and such difference the contractors claimed.][3] After some work had been done, this second contract was modified so as to make the work opposite private lots payable in cash as under the first. After most of the work was done, when over half a million dollars were due, the city agreed to loan Brown & Co., first $100,000, then afterwards $175,000 of its bonds, upon

an agreement to secure them by pledges, and to return them with interest in eighteen months, and also to release the city from all liability on the contracts unless it should be determined by the court of last resort that the lot owners were not liable. Some forty thousand dollars of the bonds under this loan agreement were not delivered. [By the contracts the city was to collect the bills for paving from the lot owners, but that was mainly done by Brown & Co., at the request of the mayor and city attorney. Brown & Co. claimed compensation for such services, and also the reimbursement of moneys paid out to them to attorneys for enforcing other like collections.][4]

EMMONS, Circuit Judge. [4][A distinct consideration cannot be given to the manifold objections made by the counsel for the city in reference to the power of the mayor, the treasurer, the city attorney, and other officials to perform various acts during the progress of this work. That the mayor and other officers could not make the agreements to take the bonds below par, that they could not, under the contract order the work suspended, could not authorize the retention of counsel to aid the city attorney in duties for the benefit of the corporation, without a vote of the council, and various similar objections were elaborately urged.

[Deeming every one of them to refer to powers which the city had in some form and some mode full right to exercise, and being referred to no express statutory prohibition, forbidding the performance in the manner which is shown to be usual in its administration of this whole class of duties, we consider them all answered by the familiar doctrine that corporations, like individuals, are bound by acts of those whom they have suffered to act as their agents, and by such modes of action with or without vote, as they have by common usage sanctioned as proper. We repeat, after careful reconsideration, the doctrines in this regard contained in Ray v. Nashville, in the middle district of Tennessee, 1871.

[We had, in that case, the benefit of a most careful and learned argument. The securities of the city had been, in violation of its ordinances, put upon the market much below their par value. The court, after explaining to the jury the distinction between acts and contracts, which were not authorized at all by the charter, and those which were so authorized, but required the performance of official acts in order to render them regular, said that the latter, even though made or performed without the formalities demanded by the statute, bound the corporation as to all parties not having actual notice as to the irregularity. That this principle was applicable alike to negotiable and non-negotiable securities, to municipal as well as to pri-

---

3 [From 5 Am. Law T. Rep. 424.]

4 [From 5 Am. Law T. Rep. 424.]

vate corporations. Among other charges, the following was given:'

["It is in evidence, that, by usage, such instruments have been signed and issued by the officers who issued these. If you credit this evidence, it is sufficient to authorize you to find that the mayor, recorder, and treasurer were agents of the corporations for this purpose, and competent to bind it by these instruments. A corporation unless restricted as to manner by its charter, may, by holding out to the public officers as clothed with certain powers, be bound by their acts within the scope of the functions so equally exercised."

[This, it was said, was at least the law of the national courts, and most clearly that of Tennessee. In the same case we excluded offered evidence of irregularities in the issue of the securities sued on. The court in that case relied on the following federal judgments: Board of Com'rs of Knox Co. v. Aspinwall, 21 How. [62 U. S.] 539; Zabriskie v. Cleveland, C. & C. R. Co., 23 How. [64 U. S.] 381; Bissell v. Jeffersonville, 24 How. [65 U. S.] 289; Rogers v. Burlington, 3 Wall. [70 U. S. 654; Van Hostrup v. Madison City, 1 Wall. [68 U. S.] 291; Mercer Co. v. Hacket, Id. 83; Meyer v. Muscatine City, Id. 384; Supervisors v. Schenck, 5 Wall. [72 U. S.] 772; Mann v. Miami Co., 2 Black [67 U. S.] 722; Railroad Co. v. Howard, 7 Wall. [74 U. S.] 415; Mayor. etc., v. Lord, 9 Wall. [76 U. S.] 414. A great number of state adjudications were also cited and discussed by counsel in the case, which it is unnecessary to cite here, in view of the pointed character of the national and local state judgments in Tennessee. A small number from the extensive list are referred to, only to illustrate the principle we consider firmly embodied in the American common law. It is not peculiar to the federal courts or those of Tennessee. The citations of course might be greatly multiplied. They are collected by Messrs. Angell & Ames, by Mr. Redfield, and other writers upon this subject, to the propositions they deem long settled, and no longer questionable. Herm. Estop. 512: "Corporations are bound by estoppel in pais like natural persons." Trustees of Aberdeen Female Academy v. Mayor, etc., of Aberdeen, 13 Smedes & M. 647; [Supervisors v. Schenck] 5 Wall. [72 U. S.] 772: The court says (page 782): "Excess of power may be ratified by express act, or impliedly by assent by acts and conduct inconsistent with any other hypothesis."

[U. S. Bank v. Danbridge, 12 Wheat. [25 U. S.] 70: Where the law required the bond of the cashier to be approved by the board of directors, it was said practical adoption by action which presumed it was sufficient. San Francisco Gas Co. v. City of San Francisco, 9 Cal. 469: The city officers had lighted the city buildings with gas without any contract of the common council. The gas company sued for the value of the gas so consumed during several years. Field, J.,

says: "The city is bound by its acts and conduct as an individual or private corporation. It is impliedly bound, and liable whenever justice demands it to be."

[Peterson v. Mayor, etc., of New York, 17 N. Y. 453: The suit was for plans for market, made at the request of a committee; although the contract of employment was void, the city was held liable on a ratification by the use of the plans. The court, by Denio, J., says: "The ratification may be by acts or conduct inconsistent with any other supposition than that it is intended to own and adopt the acts done in its name." Quoting Kent, J., he adds: "The doctrine that corporations can be bound by implied contracts, to be deduced by corporate acts, without either a deed in writing or vote, is generally established in this country with great clearness and solidity of argument," and quotes many cases. See, also, Meyer v. City of Muscatine, 1 Wall. [68 U. S.] 393; Gelpke v. City of Dubuque, Id. 175; Allegheny City v. McClurkan, 14 Pa. St. 83; Dougherty v. Hunter, 54 Pa. St. 381.

[In Ardesco Oil Co. v. Gilson, 63 Pa. St. 150, a suit for damages from the explosion of an oil refinery, built under the direction of the president of the company, without any special authority from the company, the court says: "It is their officers, having charge of their business, who, for all practical purposes, must be regarded as the corporation itself. The same rule of liability must be applied to them as to natural persons." See, also, Bank v. Gilstrap, 45 Mo. 419. That where there is power in reference to the subject generally, the city may make all the contracts and do all the acts an individual may do. See, also, City of Galena v. Corwith, 48 Ill. 423; People v. City of Cairo, 50 Ill. 154; Blunt v. Walker, 11 Wis. 349; De Voss v. City of Richmond [18 Grat. 338]; San Francisco Gas Co. v. City of San Francisco, 9 Cal. 469; Trustees of Aberdeen Female Academy v. Mayor, etc., of Aberdeen, 13 Smedes & M. 647; 5 N. Y. (1 Seld.) 374; 12 Wheat. [25 U. S.] 61.

[Adams v. Railway Co., 2 Cold. 645, puts at rest all the objections in this case in reference to the want of authority to guarantee, to issue bonds generally, to agree to pay counsel for the collection of paying bills, to sell bonds below par, and all other subordinate acts in this case, germane to, and proper for, the execution of the main duty of contracting and paying for the paving of its streets. In that case the city guaranteed the bonds of the Little Rock R. R. Co., and to secure them mortgaged a tract of land donated to it by the United States. The charter contained no special provision authorizing this action. The supreme court of Tennessee deduced the right to make the mortgage and the instrument of guaranty solely from the implied power of the corporation. On page 660 they quote [White Water Valley Canal Co. v. Vallette] 21 How. [62 U. S.] 424, including the citations of state judg-

ments, as follows: "It is well settled that a corporation, in the course of its ordinary business, may make bonds, note, mortgages, and drafts, except when restrained by law. 25 Barb. 146; 1 Sand. Ch. 280; 14 Barb. 358; 5 Watts & S. 223; 4 Robb. 517; 4 B. Mon. 423; 6 Gill & J. 323; 32 N. H. 486."

[The citation of this clause, including these judgments and the comments accompanying them, render it clear that the law of Tennessee fully authorizes the city of Memphis not only to issue negotiable securities, but to make the guaranty in question. This judgment is equally conclusive that in this state the nonperformance of conditions by a corporation, necessary to render its action regular, will not affect parties who are not cognizant of the irregularity. On page 661, and onward, Zabriskie v. Cleveland, C. & C. R. Co., 23 How. [64 U. S.] 381; is approvingly cited, as follows: "Corporations cannot, by their representations or silence, involve others in erroneous engagements, and then defeat the calculations and claims their own conduct had superinduced." This language is frequently used by the U. S. supreme court. 24 How. [65 U. S.] 300; 3 Wall. [70 U. S.] 667, etc. They also cite and approve Mercer Co. v. Hacket, 1 Wall. [68 U. S.] 93; Board of Com'rs of Knox Co. v. Aspinwall, 21 How. [62 U. S.] 539; Avery v. Alleghany City, Id. 365; Van Hostrup v. Madison City, 1 Wall. [68 U. S.] 291. Although the case before the court was that of a municipal corporation, the rule was applied that it was estopped from setting up its own irregularities to defeat its apparently formal obligations with the same vigor as if it were a private company. All the cases referred to in support of the doctrine, except Zabriskie v. Cleveland, C. & C. R. Co. [supra], are also those of municipal corporations. Towns, counties, and cities, and railroad companies, are all, by the judgments of this state, put upon the footing.] [4]

The city is liable to the contractors for the difference between the value of the bonds it agreed to give, and the value of those it did in fact give, the same as if it had agreed to deliver chattels, or the bonds of other corporations.

The questions which have given us most difficulty, and about which from the first, we have had most doubt, are—can any, and, if so, what damages be given against the city for its failure to provide the sinking fund covenanted for in the second contract, and what shall be the measure of recovery for a failure to return the $240,000 of borrowed bonds? This covenant of guaranty was intended to give value to and went to the character of the thing it agreed to deliver in payment for the work performed by the defendants. It has caused us much study, and although we have been afforded all the assistance which able counsel could give—anxious to aid our attempts to arrive at correct

results, such has been the extraordinary pressure upon our time from other duties, that we are compelled to concede that our conclusions, however much confidence we have in their rectitude, cannot be sustained by such an argument as we should, in better circumstances, have been glad to present.

Owing to the novelty of some of the applications of principles demanded by the decree we make, we felt authorized to depart from those general rules which prevent co-ordinate judges from troubling each other with their judicial difficulties. We have, in this instance, consulted several of our circuit and district court brethren, and have received some most valuable aid from learned justices of state courts of last resort. They were all, without exception, decided in favor of the general principle that damages should be given, and that for the failure to return the borrowed bonds, the measure of recovery should be the market value only.

The measure of damages for the conversion of the note or other obligation of a private person, not intended for common circulation, and where there was no class of securities to which it belonged, which had by frequent sales acquired a market value, in an action by the maker of an instrument, is the nominal amount of par of the note or security. The same rule applies in an action against the debtor, when there is a failure on his part to deliver his own obligations. The only compensation, with rare exceptions, ever given by the common law for the non-payment of money, or the non-delivery of the private securities of individuals for money, is the maximum legal interest allowed by the lex loci contractus.

That if the note of a private party be converted, its par value is the criterion of recovery, Murray v. Burling, 10 Johns. 173; Buck v. Kent, 3 Vt. 99; Decker v. Mathews, 12 N. Y. 313; Sedg. Dam.; Evans v. Kymer, 1 Barn. & Adol. 528,—and many like judgments decide. There is no conflict in the decisions or commentators. The reason given is, that however below its par value may be the security, as the subject of immediate sale to the wrongdoer, its negotiation has in contemplation of law subjected the maker to liability for its whole amount. This rule, counsel for the city say, in its proper extension sustains the position that the non-delivery of the kind of bonds described in the contract, cannot create a liability beyond the amount which the contractors have subjected the city to pay, by the negotiation of the bonds they have voluntarily received. If the bonds in this case are to be likened to the notes of private persons, this position would manifestly conclude all claim of the contractors for the damages allowed by the master.

That the non-payment of money, or the non-delivery of the debtors' own obligations for money, subjects to no collateral damages, and that the principal and interest are the limit

---

of recovery, is claimed to be the universal rule. 3 Pars. Cont. 214. This is too elementary and unquestioned to require verification, if it is asserted only as a general principle. Much reliance is placed upon its manifold applications in analogous agreements. The law, it is said, in all such cases, conclusively presumes there are no damages, because money, being the basis of the whole agreement, can always be obtained at the lawful interest. This old presumption, however, that money is always accessible on the instant, and that by no possibility can injury result which the statutory interest will not compensate, often so false in fact and frequently productive of the most substantial damages to the covenantee, caused by deliberate wrong and gross carelessness, has in modern times been frequently disregarded. Where, in the ordinary conventional process of commerce, upon which men are authorized to rely, losses have occurred, impossible of prevention by an ordinarily careful creditor, and clearly anticipated by a willful or negligent defaulting debtor, the most substantial and compensatory damages have been given. The distinction between the obligation to deliver a chattel and the payment of money, has been rejected. Courts of the very highest character have set these examples. In Rolin v. Steward, 14 C. B. 595, 78 Eng. Com. Law, 595, the defendant having funds, against which the plaintiff drew his check, neglected to pay it, and the paper was protested. In an action for non-payment, the jury found £500 damages. The court in deciding that substantial damages were lawfully awarded, although it deemed these excessive, approbate Marzetti v. Williams, 1 Barn. & Adol. 423, ruling the same principle, and hold that although it was but a debt in defendant's hands, inasmuch as the plaintiff was a trader, and would in all probability be injured by the failure to pay his drafts, the jury might find substantial damages. Sedg. Dam. (4th Ed.) 83, cites Boyd v. Fitt, 14 Ir. C. L. 43, where similar damages were given for a breach of an agreement to keep a sum of money in bank and to meet punctually plaintiff's drafts. Defendant having absented himself on a particular day, drafts were dishonored. Special damages were given for the loss of an agency by plaintiff, for the suspension of one branch of his business, and general injury to another trade. Rolin v. Steward is cited and approved. We do not overlook the real spirit of these decisions. They do not overrule the old doctrine that where one private citizen owes money to another, the creditor cannot on failure to pay, claim compensation for losses in future operations, predicated upon his expectations of the money. The rule applicable in all other cases, excluding remote and consequential injuries, would apply. Indeed we do not understand that any, but the most special circumstances, will sustain such a recovery at all. It is only when the probability of collateral loss is great—growing out of the accredited forms of business in so much that the irresistible presumption is, that both parties must have known and contemplated the results.

We know of no decisions which have as yet applied even such a limited rule to any case where the injury resulted from the peculiar private circumstances of the plaintiff. In those cited, the injury was such as might be presumed to attend similar defaults in reference to all traders, relying upon the regular performance of a financial duty, by defendant assuming a quasi public character—that of banker or broker. They partake strongly of the nature of an action on the case for negligence, although strictly in form ex contractu, and we do not suppose they intend to place in all cases the non-delivery of money in the same category with that of the like default in relation to personal property. In an extreme case where all the facts are known to the debtor, where he is, by the very face of the contract, by the nature of the subject, the amount required and the financial condition of the creditor or contractor, fully apprised that punctual payment is absolutely necessary for the prevention of irreparable losses; whether damages in any possible case could be given beyond interest, it is not necessary to decide. But I desire to say that further examination would be requisite if this record demanded a judicial answer before I would refuse to hold the municipal government of a large and prosperous city like that of Memphis, which ought at least to represent its wealth, and its gentlemen to that decent degree of responsibility upon its lawful contracts. to which the English courts have held its brokers and its bankers. The presumption of direct injury in cases like the present, is as forcible and general, it depends as little upon the exceptional condition of the contractor, as in the instances of traders whose checks are unlawfully dishonored. The contractor had as much right to rely upon the good faith of a government as upon the punctuality of a banker. When we take into consideration the magnitude of the work, the financial absurdity of supposing any man would place on deposit the million, necessary for its performance, and the knowledge derived, not from accidental information, but deduced with absolute certainty from the nature of the undertaking, that the proceeds of preceding portions were necessary for the completion of its successive sections—it would seem to present a case quite as urgently demanding substantial damages as any of those which have received such in judgment. and while the relief granted for the failure to provide a sinking fund, will not rest upon any assumption of a new general rule giving collateral damages for the non-payment of money. or the non-delivery of a defendant's private obligations for money, still the modern refusal to apply the rule which upholds it, to cases not

within its reason, gives us more confidence that we are not unwarrantably extending the principle upon which we do rely, beyond its true limits. The judgments which have likened these public bonds to chattels and held them, even in the hands of their makers, to be the subjects of sale, pledge and contract, wholly divested of their common law features as mere evidences of indebtedness, have sprung from precisely the same commercial reasons and necessities as those judgments to which we have referred, giving substantial damages for the non-payment of money. This decision, however, is rested upon the assumption that the subjects of the contract are in all their features involved in the question of damages, to be treated like chattels in possession, and the public securities of other corporations or states. The rule of damages, therefore, in reference to chattels and the implications of law resulting from their reception and use, where a warranty has been broken, will be applied in this case.

We shall give the two questions of damages for failure to provide the sinking fund and to return the borrowed bonds, no distinct consideration. The same principles substantially govern each. The measure of damages for the conversion of goods, or of the obligations of third persons, is their market value in all cases not accompanied with special injury to the owner. For the non-delivery of goods or the obligations of third persons of the kind and value contracted for, it is the difference between the value of the chattel or bond agreed to be delivered and that which is in fact furnished. The following cases among many others sustain this rule in its application to the non-delivery of the obligations of third persons, including bonds, shares in corporations, bank bills, etc.: Shelton v. French, 33 Conn. 489 (a recovery was had of the difference in value between a bond with and without a guaranty); Coolidge v. Bringham, 1 Metc. (Mass.) 552. The difference in value between a note with a genuine and a forged endorsement was given. Not the face of the note, but its value as shown by the evidence. And see Struthers v. Clark, 30 Pa. St. 210; Henegar v. Isabella Copper Co., 1 Cold. 241; Simpkins v. Low, 49 Barb. 382; Otter v. Brevoort Petroleum Co., 50 Barb. 247; Enders v. Board of Public Works, 1 Grat. 364; Smith v. Dunlap, 12 Ill. 184; Baird v. Tolliver, 6 Humph. 186; Younger v. Givens, 6 Dana, 1; Robinson v. Hurley, 11 Iowa, 410; Cleveland & P. R. Co. v. Kelley, 5 Ohio St. 180. See, also, Redf. Wills, pt. 2, p. 312, and Sedg. Dam. That this is the rule in the case of the non-delivery of personal property, books need not be cited. It is entirely clear. Within this principle the contractors claim their own case comes. If these bonds in the hands of the corporation which makes them for public sale are to be treated for all purposes germain to the contest here, like chattels or other things in esse, like the bonds and securities of third per-

sons, and other public securities; if they cannot be upon principle, and are not in fact. by the courts treated in any degree like the obligations of private individuals, where they refuse to deliver them according to contract, the same rule of damages will apply as if chattels were the subject of the agreement.

It is fully conceded by the counsel for the contractors that no such rule could be applied, if the contract was for the delivery of private notes of citizens in ordinary business between individuals. After much consideration we think no distinction should be made between the contract before the court, and one between the same parties for the same work payable in the public bonds of another corporation where there has been a refusal to deliver those of the kind contracted for. It is believed the adjudications already made in reference to the nature of these bonds, go quite beyond the necessities of the present case. That these corporate securities, under seal, made payable to bearer, and intended for sale in the public market, are negotiable, in as ample and full sense as the circulating medium of the country, the following adjudications which decide it in manifold applications determine: White v. Vermont & M. R. R., 21 How. [62 U. S.] 575; Board Com'rs Knox Co. v. Aspinwall, Id. 545; Zabriskie v. Cleveland, C. & C. R. Co., 23 How. [64 U. S.] 381; Woods v. Lawrence Co., 1 Black [66 U. S.] 386; Moran v. Commissioners, 2 Black [67 U. S.] 722; Mercer Co. v. Hacket, 1 Wall. [68 U. S.] 95; Gelpcke v. Dubuque, Id. 175; Dunham v. Cincinnati, P., etc., Ry. Co., Id. 257; Van Hostrup v. Madison City, Id. 291; Meyer v. Muscatine City, Id. 391; Murray v. Lardaer, 2 Wall. [69 U. S.] 110; Thompson v. Lee Co., 3 Wall. [70 U. S.] 327; Rogers v. City of Burlington, Id. 654; Railroad Co. v. Howard, 7 Wall. [74 U. S.] 407; Campbell v. Kenosha City, 5 Wall. [72 U. S.] 197; Morris C. & B. Co. v. Lewis, 1 Beasley [12 N. J. Eq.] 329; Morris C. & B. Co. v. Fisher, 1 Stockt. [9 N. J. Eq.] 667; Mechanics' Bank v. New York & N. H. R. Co., 3 Kern. [13 N. Y.] 599; Brainerd v. New York & H. R. R. Co., 25 N. Y. 496; Delafield v. State, 2 Hill, 159, 8 Paige, 527; Connecticut Mut. Life Ins. Co. v. Cleveland & C. R. Co., 41 Barb. 9; Brown v. Ward, 30 Duer, 660; City of Bridgeport v. Housatonic R. Co., 15 Conn. 502; Bulkley v. Welch, 31 Conn. 342; Eaton & H. R. Co. v. Hunt, 20 Ind. 467; Commissioners v. Bright, 18 Ind. 96; Junction R. Co. v. Cleneay, 13 Ind. 161; Maddox v. Graham, 2 Metc. (Ky.) 79; Chapin v. Vermont & M. R. R., 8 Gray, 575; Craig v. City of Vicksburg, 31 Miss. 216; De Voss v. City of Richmond, 18 Grat. 338; Mills v. Gleason, 11 Wis. 488; Clark v. City of Des Moines, 19 Iowa, 213; Bank of Ashland v. Jones, 16 Ohio St. 145; all these judgments assert the general rule by which we have preceded them. Many of them go further and decide that such bonds are to be deemed essentially chattels. and things in esse, and not mere choses in action.

This has been done as often as exigencies required it. No judgment conceding their negotiability, has denied the additional feature of their similitude to chattels. Pennsylvania alone decides differently, confessing that this local rule is exceptional, and at war with well settled law here and in England.

It would be useful and very persuasive evidence of the conclusions at which we have arrived, to follow the numerous applications of this general principle through the cases which announce it. The pressure upon the court and the absence of all clerical assistance which forbids elaborate examination, render this impossible; a few instances only in illustration of how fully the courts have likened these bonds to chattels, and how substantially they have refused to apply the old rule of the common law, applicable to the non-delivery of the evidences of indebtedness of individual defendants, to bonds like these, can be referred to. If the note or other chose in action of a private party is pledged as security for a debt, the creditor, owing to the nature of the subject, takes only the power of collection, not that of selling it. See Morris, C. & B. Co. v. Fisher, 1 Stockt. [9 N. J. Eq.] 667; Morris C. & B. Co. v. Lewis, 1 Beasley [12 N. J. Eq.] 323; Wheeler v. Newbould, 5 Duer, 29, on appeal 16 N. Y. 392; Brown v. Ward, 3 Duer, 660; Garlick v. James, 12 Johns. 146. The reason given is that such securities have no market value like chattels, are not so dealt with in commerce and that there is, therefore, no implied power of sale. Where bonds of a corporation intended for general sale, like those now in question, are thus pledged, this rule has been in vain invoked to invalidate their sale by the pledge. That literally they come within this rule is conceded. That they are choses in action, evidences of indebtedness, is said; but of so different a nature from those included in the principle relied on, that they are to be treated like chattels, and must be subject to the same rule and property incidents. In Wheeler v. Newbould, 5 Duer, 29, on appeal 16 N. Y. 392, in deciding that private notes could not be sold, they go upon reasons necessarily involving the right to do so, if they had the incidents of such securities as those before us. The following case (Brown v. Ward) in 3 Duer, 660, had been tried, but not determined, when the preceding one was decided in the superior court. In the latter, the public bonds of a railroad company had been pledged and sold like personal property. The court sustaining the sale expressly distinguished the case from Wheeler v. Newbould upon the ground that the subject of the pledge was to be treated like things in esse, and not like the private notes in that case. In Morris C. & B. Co. v. Lewis, 1 Beasley [12 N. J. Eq.] 323, the company's own bonds were pledged to secure its own debt, and sold at about thirty cents on the dollar. The court says the bonds in the hands of the company making them were alike the subjects of pledge and sale as were personal chattels. They were not to be treated like those of private persons. See, also, Morris C. & B. Co. v. Fisher, 1 Stockt. [9 N. J. Eq.] 667. There are other similar judgments but this principle is undoubted. These have been particularly noticed only to say, that every reason upon which this whole case rests, shows that if the same defendant had three different classes of bonds—1st, 2d, and 3d, worth according to the priority of their respective liens, 100, 75 and 50 cents upon the dollar, and they should make a contract for work, or for the purchase of engines and cars, agreeing to pay therefor in their first mortgage bonds at par, and should deliver instead those of the third class of one-half their value in the market, the company would be liable in damages for the difference in value between what it agreed to and what it did deliver. Freed from all questions of waiver and unembarrassed by the old notion that interest is the measure of damages for the non-delivery of money, or a chose in action for money, and treating the subject of the contract as what the courts now affirm they are, chattels and things in esse, no plainer proposition can be stated than that the breach of the contract subjects the violater to substantial damages.

Hasbruck v. City of Milwaukee, 21 Wis. 217, Wills v. Gleason, 11 Wis. 488, Cady v. Watertown, 18 Wis. 322, and other similar cases, although not in their principle distinguished from White Water Val. Canal Co. v. Vallette, 21 How. 414, and the large class to which it belongs, are in their facts so like the case before the court as to entitle them to special mention. In 21 Wis. 217, the corporation contracted to pay for a public work in its bonds at par. City officials without special resolution agreed, if the contractors would proceed, they should have the bonds much below par. This modification was sanctioned by the court of last resort. It overruled manifold objections to the general power of the corporation to make such an agreement, and if it had the authority of its officials without formal corporate action to do so. A similar transaction between the citizens dealing with private notes would have been illegal upon many common law and statutory grounds. Reposing, however, upon the peculiar character of these securities, it was held the city might dispose of them at their market value. The whole treatment of the case necessarily includes the propositions essential to give these contractors substantial damages, where the corporation has contracted to deliver them one kind of bonds, and has constrained them to accept another. The other citations quite as forcibly, for our purpose here, apply the principle which holds these securities to be subjects of sale and payment by the city at the common price. It is well settled law, too, that when a citizen desires a loan of money, and makes his private note for the purpose of raising it,

that no device of sale, pledge or other collateral transfer can protect the ownership of him who receives it from the imputation of usury if taken at a price less than that which will allow him lawful interest. May v. Campbell, 7 Humph. 450; Taylor v. Bruce, Gilmer, 42; 10 N. Y. 198; 9 B. Mon. 530; 8 Cow. 689. The judgments are very numerous to this point. In circumstances identically like those where private paper has been held void for usury, a like disposition of this class of bonds has been held not to come within this rule. Municipal, railroad and other public and quasi public corporations, have, in numerous instances, where the sole object has been a loan, published and negotiated as such, and where no statute authorized a sale below par and where the question turned solely upon the essential and substantial character of the security sold, disposed of their bonds at rates giving the purchaser manifold the lawful interest, and it has been adjudged not to be usurious.

The point has been in all these cases directly raised, and the judgment always rested upon the answer to the question, are they to be treated like chattels or like the choses in action of private persons? The answer has been that where a corporation makes such securities for vendition in the market. they are to be treated as if it offered for sale its personal property, or the notes and bonds of other corporations. In White Water Val. Canal Co. v. Vallette, 21 How. [62 U. S.] 414, mortgage bonds of the corporation reciting that they were intended for a loan, were paid at fifty cents on the dollar to a contractor. It was claimed that the transaction was usurious, but the supreme court going upon the nature of the securities and the transaction, held it to be lawful. In Morris C. & B. Co. v. Fisher, 1 Stockt. [9 N. J. Eq.] 667, like bonds of the company to double the amount were pledged to secure a debt. In support of the plea of usury it was argued that it was but the pledge of one promise to secure another, that the legal consequences could not be different than if the whole transaction had been evinced by a single contract. It was quite conceded by the learned court that had it so been, or had the dealing been with the private paper of an individual in a like transaction, it would have been unlawful; nevertheless it was held that these public securities in the hands of the corporation which makes them, as well as in those of third persons, are to be treated like other personal property, and the objection was not sustained. In Bank of Ashland v. Jones, 16 Ohio St. 145. bonds of a railroad company having been guaranteed and sold at a price under par, and suit brought upon the guaranty, among other objections urged was that of usury. In the argument by which it was overruled, the court say the bonds in the hands of the original makers "are like chattels." The guaranty is substantially treated like the warranty of personal property, and see the cases of Curtis v. Leavitt, 17 Barb. 311, on appeal 15 N. Y. 200; Leavitt v. De Launy. 4 Comst. [4 N. Y.] 364; Tracy v. Talmage, 18 Barb. 456, 14 N. Y. 162; People v. Mead, 24 N. Y. 125. The argument and illustrations to be found in this whole class of judgments leave nothing for the court by way of analogy or extension of their principles, in order to decide that the delivery of a bond of less market value, and of materially a different character from that agreed upon, subjects the corporation to damages. The case comes within the conceded truism that the measure of recovery for the breach of an express warranty in the sale of personal chattels is the difference between the value of the thing as warranted and its value as actually delivered. Numerous decisions, many of which are obligatory upon this court, determine principles which we think brings the subject of this contract within the rule. That in this case the city should respond in damages in justice to the contractors, is apparent from the fact that upon a resale of some of these bonds with like warranty these very defendants were held liable to this measure of damages. Callanan v. Brown (1871) 31 Iowa, 333.

In the hurried examination we have been compelled to make, we find but one case of the exact application we make of these principles to the question of the liability of the contractors, for the bonds loaned, though we can affirm with much confidence there are others. In Tracy v. Talmage, 18 Barb. 456, 14 N. Y. 162, the state of Indiana sold its own bonds to a trust company. The sale was held void for illegality, but the company was held liable to the same measure of damages as if it had disposed of the bonds without any contract. The court below decreed their payment at par. The superior court modified the judgment in this respect and held their market value to be the true criterion. The case is one of the most elaborately argued upon the question of illegality to be found in the books. That of damages was not fully discussed, but from the character of the counsel. its re-argument in the court of appeals, the modification of the decree in that court upon this very point, it is very high evidence of the law that where such securities are converted the measure of recovery in a suit by the maker is their market value and not as in the like case of the private note of an individual, the sum which he may be ultimately compelled to pay. The different rules are naturally adapted to probable financial consequences of the act or omission complained of. The private citizen has circulating no class of securities having a well known price, and which, in theory and fact, he can, at any moment, purchase at market standard. If his note is borrowed and not returned he must pay its amount. If the bonds are converted or withheld which have an established price at which they are in fact purchasable. no possible injury beyond it can result from withholding them. Every familiar rule regulating

the right to damages, that which stops at the limit of loss but gives all which the real loss is, will sustain both branches of this portion of our decree. They will compensate for refusal to deliver the more valuable bond agreed upon by the city, and will restrain its recovery to the value in the market of what it loaned and what it can still purchase for the sum allowed by the master.

⁴ [The acceptance and sale of the bonds was not a waiver of the claim for damages. The guaranty in this case is not technically a warranty of the bonds. It is for the performance of a collateral act affecting their value. The legal and financial consequences, however, are precisely the same as if the city had warranted the bonds to be of a particular character. Their treatment, therefore, has been and will be the same as if they were the special subjects of the guaranty.

[We are referred to no decision giving any countenance to the position that mere acceptance and use by the contractors is per se a waiver of the breach of warranty on the part of the city. Counsel have not relied upon them, but there are a few decisions holding that in action for the price of goods sold with a warranty the defendant could not show the breach if he had accepted the property, and a few commentators, misapprehending them, have erroneously supposed they rested upon the ground of waiver, and that there could be no recovery in any form for a breach of warranty after a voluntary appropriation of the subject. Those judgments, however, announce no such rule; but, on the contrary, some of them expressly, and all of them impliedly, concede there may be a cross action for the damages, notwithstanding the acceptance and use. The decisions say only, that under the general issue, in an action upon a contract, there could be no partial defense. It is a mere question of pleading and form of action.

[The general doctrine that the vendee of personal property with warranty may maintain an action for the breach, notwithstanding he has accepted and used it, is well established in this country, and especially in the federal courts. Withers v. Green, 9 How. [50 U. S.] 213; Benjamin v. Hillard, 23 How. [64 U. S.] 149; Lyon v. Bertram, 20 How. [61 U. S.] 150. Numerous similar cases are found in the circuit courts. It is, however, by no means peculiar to the national jurisprudence, for in its earlier history, there being some decisions tending the other way, they adopted the rule we have announced, because it was supported by so many state adjudications. Every American treatise announces the rule which is applied in the following judgments. They decide and illustrate the principle that waiver is a question of fact, depending upon the circumstances of each case, and that the law will

not presume a waiver where it is not clear that the parties intend one. Kellogg v. Denslow, 14 Conn. 411; Reed v. Randall, 29 N. Y. 358; Muller v. Eno, 14 N. Y. 598; Borekins v. Bevan, 3 Rawle, 23; Osgood v. Lewis, 2 Har. & G. 496; Hastings v. Lovering, 2 Pick. 214; Field v. Kinnear, 4 Kan. 476; Babcock v. Trice, 18 Ill. 420; Coolidge v. Brigham, 1 Metc. [Mass.] 547; Fielder v. Starkin, 1 H. Bl. 17; Buchanan v. Parnshaw, 2 Term R. 745; Heyworth v. Hutchinson, L. R. 2 Q. B. 447; 1 Pars. Cont. (5th Ed.) 591; Benj. Sales, 463, 522, 673, et seq.; Sedg. Dam. (4th Ed.) 319.

[Within the rule of these cases, the acceptance and use of these bonds must either have ben sold or the work must have stopped. It is an irresistible inference from the proof that every city official knew the rate at which they were being disposed of—one utterly ruinous to the contractor, if he was to have no remedy for the city's default. So far from the circumstances under which the parties acted indicating an intention on the one part, or expectation on the other, of waiver, the presumption is much stronger of an understanding that they would be sold at a discount and the loss made good.] ⁴

There is one objection to this limited measure of recovery by the city which deserves notice and which could not well be dealt with in other connections. It was said by the corporation's counsel that whatever other powers the city might exercise and howsoever its officers without vote might bind it in the ordinary and accustomed course, at least there was no power anywhere in the charter to make its bonds for the purpose of loaning them to third persons, and such a loan, upon the face of the papers, this transaction was. As a general proposition, if it were simply a loan and no more, I should say counsel are right. Few such corporations have any power of making negotiable securities solely for the purposes of loan and circulation. But here, although called a loan, being made to its own creditor and in furtherance of an object it was its duty to promote, it would seem quite clearly beyond the reach of any such objection. It is, however, wholly immaterial here, because if illegal then, as is decided in the case of Tracy v. Talmage, just cited, the contract being void, the defendant will be held to have wrongfully converted the bonds and the measure of recovery be what is here allowed, their market value. Although quite in another connection, and having reference to a matter before disposed of, we add that if this point is well taken, if the contract of loan is void for illegality, it necessarily renders also void the release which is a part of it. If void in part, it is so, of course, in whole.

It is to be regretted that a novel application of general doctrines, one believed to be

---

⁴ [From 5 Am. Law T. Rep. 424.]    ⁴ [From 5 Am. Law T. Rep. 424.]

beneficial in all its rightful limitations, should for the first time come before the court in circumstances well calculated to startle a conservative judgment and challenge the severest criticism of the principle which allows such damages at all. We have endeavored, however, to disregard the accidents of this record, and not to be deterred from an assertion of what was thought to be a right rule, because in the instance before us the proof forces a decree beyond what (had there been a fit administration of the city finances,) ought to have resulted from similar defaults. There should with public confidence in the integrity and intelligence of the municipal government, be no such extraordinary difference in price as the witnesses establish. The city, for some reason, introduced no testimony whatever upon the difference in market value between bonds secured by a sinking fund and such as were delivered in their stead. It may be true, that such was the reputation of the city government, that no counter proof upon this point would have varied results; still, so far as the amount of damages is concerned, it would be more satisfactory to know whether such a consciousness withheld the efforts or a reliance upon the doctrine that the whole inquiry was immaterial. That a superior court will adopt our views, we are not confident; but being certain that at an early day the general principles upon which we rely, must be adopted into our law, we have not hesitated to declare it now, although no precedent precisely applicable has been found for our decree.

[NOTE. Upon appeal to the supreme court the decision in this case was reversed as to the amount to be recovered, several of the items being stricken out. 20 Wall. (87 U. S.) 289. In accordance with the mandate of the supreme court a decree was entered in the circuit court for $292,133.47 and costs. Execution was issued and returned nulla bona. The plaintiff then filed his petition for mandamus to compel the city of Memphis to levy a tax sufficient to pay his judgment. Upon a hearing the writ was issued (case unreported). This decision was affirmed by the supreme court. 97 U. S. 293. See, also, collateral appeals, Id. 284, 300. Subsequently the case was again heard in the circuit court upon the petition of the plaintiff for a writ of mandamus compelling an additional levy. The writ was granted. Case No. 2,020.]