Nicholson, C. J.,
delivered the opinion of the court:
These causes commenced by petitions for mandamus against the city of Memphis, in the second circuit court of Shelby county. The several relators are holders and owuers of coupons of the bonds of the city of Memphis, representing interest on the bonds past due. They all obtained writs of alternative mandamus, and after returns thereto the writs of mandamus were made peremptory, from which judgments the city has appealed. Hpon looking into the several cases, we find that the pleadings have been made up in the case of P. 0. Bethel, in a manner more fully to raise the questions to he decided than in either of the others, and for that reason the questions will be considered with special reference to that case, but our conclusions will embrace all the cases. The recitals in the alternative writ follow' the averments in the petition to the effect that the relator is the holder and owner in due course of trade, for value, ourchased by him prior to the 23d of March, 1875, of 104 coupons from bonds of the city of Memphis, being the semiannual interest on the same, sixty-two of said coupons being interest warrants from I,eftwick bonds of the city of Memphis, issued about July 1, 1868, for the purposes of paving the streets and funding the debt of said city, giving the numbers of the bonds, all for $30 each, except two for $15 each; twenty-seven other coupons of Taylor issue, 1855, giving the num- *208 her, each for $30; five other coupons of Carroll issue, 1855, giving the numbers, each for $30; ten other coupons from what are known as the “gold bonds” of the city, issued by John Johnson, for funding purposes since 1870, giving their numbers, each for $30. All of said coupons are payable to bearer in the city of Yew York, Y. Y., all due July 1, 1875. The other recitals state all the facts necessary to entitle the relator to the relief sought. The city of Memphis appeared and moved to quash the alternative writs, and, upon the overruling of this motion, an answer and return to the writ was put in, on which the issues were made up by the demurrer of the relator.
1. The first return is that defendants do^ not know, and cannot admit, that relator is the owner and holder of the coupons, and they require proof. The fact that the relator is the holder of the coupons payable to bearer is sufficient evidence of ownership to put the proof on the defendants. This return was therefore insufficient, and the demurrer as to it was properly sustained.
2. Defendants return that, as to the coupons from the Leftwick bonds, bond üo. 2,075 was issued without authority, and that the same is void. This return was amended so as to state that said bond ISTo. 2,075 was issued by Mavor Leftwick without authority, unless he was authorized, either by an ordinance passed on the 20th of September, 1S66 (amended on the 26th of September, 1866, and again amended on the 5th of March, 1867), or by an ordinance passed on the 18th of April, 1868. The demurrer to this return raises the question whether the mayor had authority, under either of the ordinances referred to, to issue bond Yo. 2,075. The ordinance of April 18, 1868, was adopted in pursuance of the act of the legislature of December 3, 1867 [Private acts 1867-68, ch. 36, sec. 4], which provided “that the board of mayor and aldermen, for the purpose of funding the debt of the. city, shall have power to issue the bonds of the city, bearing interest at the rate of *209 Six per cent, per annum, and having not more than thirty years to run; hut this authority shall not he exercised unless the ordinance authorizing the same shall first he submitted to a vote of the qualified voters/’ etc. The authority of the board of '.mayor and aldermen under this act was unrestricted as to the amount of the bonds to be issued, except by the amount of the debt of the city. On the 18th of April, 1868, as stated in the return, the board passed an ordinance as follows: “That, for the purpose of funding the debt of the city of Memphis, the mayor is hereby authorized to issue the bonds of the city, bearing six per cent, interest, to the amount of one million of dollars, having thirty years to run, and payable in Hew York or Memphis, at the option of the mayor.” An election was provided for and held, whereby the ordinance was approved by a popular vote. It thus appears that the board of mayor and aldermen adopted $1,000,000 as the amount proper to be issued in bonds for funding the debt of the city. It is stated in the return of defendants that, after the passage of this ordinance, John W. Leftwick, the then mayor of the city, issued $1,135,000 of funding bonds, bond .No. 2,075 being one of the $135,000 issued by said Leftwick over and above a million. As it does not appear that there was any other ordinance passed under the act of December 3, 1867, authorizing the issuance of the $135,000, or any vote of the people approving such ordinance, it is clear that the $135,000, including bond-Ho. 2,075, ivas not issued under the authority of the ordinance of April 18, 1868, or of the act of the legislature of December 3, 1867.
The next inquiry is whether Mayor Leftwick had authority, under the ordinance of September 20, 1866, as amended by that of September 26, 1866, and that of March 5, 1867, to issue bond Ho. 2,075. This ordinance was passed in pursuance of the act of the legislature of February 20, 1860 [Private acts 1859-60, ch. 70, sec. 3] in *210 which authority was given to the mayor and aldermen to issue bonds, having not over thirty years to run, payable m such city in the United States as the board might elect, having interest coupons attached, at not exceeding ten per cent, per annum, to an amount not exceeding $250,-000, for the purpose of funding all or any of the present due debt of the city, or that not yet due, but for which city bonds have been heretofore issued; but the exercise of the power was made dependent upon the approving vote of a majority of the qualified voters, with a proviso that no such bond should issue until and unless said board first, before each issue, provide by ordinance for the regular payment of the interest, and also provide an annual sinking fund, etc. This act was passed on the 20th of February, 1860, but the power conferred by it upon the corporate authorities of Memphis was not exercised until the 20th of September, 1866. The authority to issue the bonds was made dependent upon the approval of a majority of the votes to be cast at an election to test that question. The ordinance, as originally passed on the 20th of September, 1866, authorized the issuance of $250,-000 in bonds for funding the city debt, with interest at six per cent., payable in FJ'ew York city; and the mayor and finance committee were authorized to dispose of them. Six days afterwards, on the 26th of September, 1866, the ordinance was so amended as to make the bonds bear ten per cent, interest, and be payable in Memphis; and on the 5th of March, 1867, the ordinance was again so amended as to make the bonds payable in the city of Little Bock, Ark., or Jackson, Miss. The mayor was authorized to take up any bonds theretofore issued, and replace the same with those authorized by this' ordinance; and, after making this substitution, the mayor was authorized to issue the balance of said bonds, with interest at ten per cent., payable at Little Bock, Ark., or Jackson, Miss., or he was authorized to issue bonds bearing'six per cent, interest, payable in the *211 city of Sew York, and lie was authorized to negotiate the said six per cent, bonds in any market at eighty-five cents on the dollar. It is stated in the return of defendants, and admitted by the demurrer to be true, that under the ordinance just referred to, authorizing the issuance of $250,-000 of bonds, "W. 0. Lofland, the then mayor of the city, issued only $81,000, and that thus the matter stood at the time of the passage of the ordinance authorizing the issuance of $1,000,000 of bonds; and that after the passage of the latter ordinance,. John W. Leftwick issued $1,135,000 of funding bonds, including bond No. 2,075 among those issued over and above $1,000,000.
The question presents itself, was the act of Dec. 3, 1867, so inconsistent in its provisions with that of February 20, 1860, as to operate as a repeal of the authority to issue the bond No. 2,075? The act of 1860 authorized the issuance of $250,000 of bonds bearing not exceeding ten per cent., for the purpose of funding all or any of the present due debt, or that not yet due, but for which bonds may have been issued, but bonds not to be issued except upon a popular vote, after thirty days’ notice. The act of December 3, 1867, authorizes the issuance of bonds to an amount sufficient to fund the entire debt of the city, bearing interest at six per cent., and having not more than thirty years to run; but the bonds not to be issued except upon a vote, after ten days’ notice. We think it obvious that the former act was intended to authorize the issuance of a limited amount of bonds for the purpose of funding the debt then existing, and therefore that it was special and temporary in its object and character.' But the latter act was intended to give unlimited authority in the issuance of bonds for funding the whole debt, including that debt existing when the former act was passed, as well as all debts subsequently created. It was intended to' authorize the issuance of any amount of bonds necessary to fund the entire debt of the city, the bonds not to run more than *212 thirty years, and to bear six per cent, interest, and to be issued only after a vote of the people, upon ten days’ notice. It was not intended to leave in force a special act authorizing the issuance of a limited amount of bonds to fund the then existing debt, the bonds to bear not more than ten per cent, interest, and at the same time to give authority to the board to issue bonds bearing six per cent, interest, sufficient in amount to fund the entire debt, as well that existing when the act of 1860 was passed as that created after-wards. In the next place, we are of opinion that the ordinance of April 18, 1868, for the issuance of $1,000,000 of bonds for funding the debt of the city, operated as a repeal of the ordinance of September 20, 1866, and the amendments thereto, providing for the issuance of $250,-000 of bonds for funding the then existing debt. As we have seen, the act of December 3, 1867, authorized the board of mayor and aldermen to issue a sufficient amount of bonds to fund the entire debt of the city. In exercising the authority so given, the board ordained that, “for the purpose, of funding the debt of the city of Memphis, the mayor is authorized to issue the bonds of the city to the amount of $1,000,000.” It is manifest that the board intended by this ordinance to provide for funding the entire debt of the city, and for this purpose they authorized the issuance of $1,000,000 of bonds. If it had been the intention of the board not to provide for funding the debt existing in 1860, when the funding act for $250,000 was passed, there would have been some indication in the ordinance that the debt was not to' be included in the $1,000,000 of bonds. But, instead of any such exclusion of that debt, the language of the ordinance clearly embraces the whole debt of the city, and necessarily abrogated any authority of the mayor to issue bonds under any previous ordinance. The return shows that instead of issuing $1,000,000 of bonds, as authorized by the ordinance, the mayor issued $1,135,000; and there is nothing in the *213 record to rebut the presumption that the excess of $135,-000 was not issued under the ordinance of April 18, 1868, nor is there anything showing that the mayor assumed to issue this excess of bonds under the ordinance of September 20, 1866, as amended. In the second amendment of the ordinance of September 20, 1866, the-mayor was authorized to issue the bonds bearing interest at six per cent., and payable ii ■ i-v; but- in negotiating them he was required to obtain eighty-five cents on the dollar. There is nothing in the record showing at what discount bond No. 2,015 was sold by Leftwick, and therefore nothing showing under which ordinance he claimed authority to issue the excess over $1,000,000. Our conclusion is that Mayor Leftwick had no authority, either under the act of December 3, 1867, or the act of February 20, 1860, or under either of the ordinances of September 20, 1866, or of April 18, 1868, to issue the $135,000 of bonds, and therefore that the demurrer as to tire coupon from bond No. 2,075 was erroneously sustained. As this bond was issued without authority, the payment of interest thereon by the city could not give it validity. Nor did the subsequent acts of the legislature authorizing and directing the city to provide the means of paying the interest on its debt have the effect of ratifying or legitimating bonds illegally issued. They were intended only to provide for the interest on bonds legally issued.
3. The defendant’s return that all of the Leftwick bonds, bearing interest at six per cent, per annum, were issued at a discount greater than six per cent., and therefore that they were usurious to the extent of the difference between' the face of the bonds and the amount received and realized by the city therefor; and also that such issue was illegal and unauthorized, and could, at most, confer upon the takers of the bonds a right to recover from the city the amount received by said city. It *214 is well settled that if a person make bis note for tbe purpose of raising money, and sell it at a discount greater than six per cent., tbe transaction is usurious; and neither tbe purchaser of tbe notes, nor bis assignee, with notice, can recover more than tbe amount paid, with legal interest. But does this rule apply to tbe city bonds issued by authority of law, having thirty years to run, bearing interest at six per cent., payable to bearer, and authorized to be issued by tbe city for tbe purpose of funding its indebtedness? It is fully established by a great preponderance of authorities that there is a marked difference between individual securities and the bonds of municipal corporations in their origin, character, and purposes. The bonds of municipal corporations are now recognized as negotiable in as full and complete a manner as bank bills, or the national currency of the country; and now they stand not only equal before the law to the negotiable paper pertaining to the commercial business of the country, and to our circulating medium, but they are also, for their greater advantage and for the purpose of causing them to be accepted as money, the most desirable investments for capital in the monetary centers of the world, regarded as chattels, in so far as that character shall tend to relieve them from defenses and burdens incident to choses in action merely, and give to them a merchantable and vendible quality. Griffith v. Burden, 35 Iowa, 143. Further, “this character of chattels, which, by the modern rule, is attached to these securities, must also, upon principle, exempt them from the defense of usury; for, if they are regarded as chattels, then, since usury cannot be -predicated upon a sale of chattels merely, neither can it be predicated upon a sale of bonds having the. recognized character of chattels.’'" Id. In the case of City of Memphis v. Brown, 1 Flip., 188, heard by Judge Emmons, in tbe United States circuit court for "Western Tennessee, *215 in March, 1872, it became necessary to investigate' the nature of the bonds issued by the city of Memphis; and, in his opinion, 'which is characterized by' great research, Judge Emmons cites a long list of authorities sustaining the proposition that “these corporation securities, under seal, made payable to bearer, and intended for sale in the market, are negotiable in as ample and full sense as the circulating medium of the country.” After citing over fifty cases, he adds: “All these judgments assert the general rule by which we have preceded them. Many of them would go further, and decide that such bonds are to be deemed essentially chattels and things in essé, and not mere choses in action. This has been done as often as exigencies required it.” Assuming' that these authorities establish the entire negotiability of the city bonds, 'and the right of the city officers to sell them in market as chattels, it is clear that under the authority to sell them at their market value, although that might be at a greater discount than .legal interest, the transaction would be neither' usurious nor illegal, and therefore the city can neither raise a question of usury nor of scaling. The demurrer' to this return was therefore properly sustained.
4. The only other ground of defense stated in the return of defendants which we deem it necessary to notice is that in which defendants deny that at the time of the issuance of said bonds there was any special statutory right in, or duty imposed upon said city to levy a special or other tax for the payment of said bonds. So far as such legislation was had, it was subsequent to the issuance of the bonds, and defendants are advised that the legislature could take away by repeal any power in the city to levy such tax; and it has, in fact, limited the power of the city in that respect, which limitation is valid and binding on the city. The legislation relied on by defendants as a limitation on the power of the city to impose taxes for the purpose of paying the interest due on its bonds, is found in secs. 63 *216 and 64. of tlie act of 1875, cli. 92. By these sections the city is prohibited from levying and collecting a greater rate of taxes than $1.60 on each $100 worth of taxable property for any and all purposes; and of this amount only twenty cents shall be appropriated to the payment of interest on the bonded debt. As it is conceded that this amount of tax, if collected, is entirely insufficient to pay the interest on the deb’t, the question arises whether the legislature had the constitutional right to prohibit the levying and collecting by the city of an amount sufficient to pay the interest on the debt contracted before the act was passed. It is not insisted that the legislature had the power to prohibit the city corporation from collecting a sufficent amount of taxes to pay the interest on her debt, if, at the time the interest on the debt became due, there were statutes in existence making it the imperative duty of the city to levy and collect such taxes-; but it is insisted that'if there was only an authority in the city to levy and collect -the necessary tax, then -the legislature might legally repeal this,discretionary authority, and that upon- this ground, the act of 1875 is constitutional and valid. In support of this position, the case of Justices of Cannon Co. v. Hoodenpyle, 7 Hum., 145, is relied on. It was intimated in that case that, when the justices were authorized to levy and collect taxes for county purposes, even the legislature could not control their discretion; and it was expressly decided that the discretion of the justices was not subject to the compulsory process of the courts. In the subsequent case of Newman v. Justices of Scott Co., 5 Sneed, 699, the court said that if the case of Justices of Cannon Co. v. Hoodenpyle is to be understood as deciding that the legislature does not possess the constitutional power to provide for the compulsory assessment of a tax to discharge a debt properly contracted, under the authority of a general law-, for a legitimate county purpose; then the court felt constrained to dissent from its authority. *217 But the court proceeded further to reason on the subject, as follows: “Was it deliberately designed that these quasi corporations should be invested with the power to create debts for legitimate and indispensable county purposes, and yet be'absolved from all legal obligation, and placed beyond the power of coercion to discharge such debts? We do not so understand the constitutional provision in question. The power was given, not merely that it might, but that it should, be exercised in the cases contemplated by the constitution. The grant of the power to raise money in this mode for the discharge of county liabilities carries along with it, by necessary implication, the obligation to do so.” This reasoning is so directly in conflict with that employed in the case of Justices of Cannon Co. v. Hoodempyle, that we are bound to regard it as a virtual overruling of that case. This question was fully considered in the case of Supervisors v. U. S., 4 Wall., 435 [18 L. ed., 419], in which case a statute of Illinois contained the following language: “The board of ’supervisors in such counties as may be owing debts which their current revenue, under existing laws, is not sufficient to pay, may, if deemed advisable, levy a special tax,” etc. Justice Swayne, after reviewing the authorities, said: “The conclusion to be deduced from the authorities is, that where power is given to public officers, in the language of the act before us, or in equivalent language, whenever the public interest or individual rights call for its exercise, the language used, though permissive in form, is, in fact, peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given not for their benefit, but for his. . . . In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose a positive and absolute duty.” [18 L. ed., 423.] These authorities are conclusive of the question, without reference to the act of 1868, ch. 102, sec. 5, which makes *218 it the imperative 'duty of the city,' at the beginning of each corporate year, to levy a special tax to pay the interest on the bonds of the city of whatever description, which tax shall be collected in money, and held for the sole purpose of paying said interest. It follows that the act of 1875 furnishes no legal excuse to defendants for failing and refusing to levy and collect the necessary taxes; and the demurrer to this ground of defense in the return was properly sustained.
In the argument of the cause, reference was made to $100,000 of paving bonds as an over-issue, and without authority. We have found nothing in the record raising any question as to these' bonds, and for that reason we have pretermitted any discussion of the question as to their issuance.
Tho result is that we find no- error in the action of the court below in any of the cases, and their judgments are affirmed, except, as to the coupon of bond No. 2,075, the judgment sustaining the demurrer is reversed, and the peremptory mandamus as to that refused.-