GRIFFITH v. BURDEN *et al.*

1. Bonds: OF MUNICIPAL CORPORATION : CONVERSION : DAMAGES. In an action for the conversion of a bond of a municipal corporation the measure of damages, in the absence of special circumstances appertaining to the bond, will be its market value at the time of the conversion with interest thereon from that time, and not the face or amount of the bond.

2. —— But if the bond had a special value by reason of any stipulation or security pertaining to it, the plaintiff might, it seems, recover such increased or special value, if the facts respecting it were known to the defendant at the time of the conversion. The history and *status* of municipal bonds traced and defined by COLE, J.

*Appeal from Dubuque District Court.*

THURSDAY, SEPTEMBER 19.

THE plaintiff, in his petition, alleges that on the 26th day of October, 1866, he delivered to the defendants a cer-

tain $1,000 Minnesota State bond, No. ——, with a large number of coupons thereto attached, issued in aid of the railroads in said State, for collection, or for return on demand ; that he has demanded the return of said bond and coupons, but defendants have failed to return the same and have converted them to their own use. The plaintiff asks judgment for $2,000 and costs. The defendants, in their answer, admit the delivery of the bond to them and their failure to return the same, and aver that since the commencement of this suit they have tendered plaintiff another Minnesota State bond of the same series and value as the bond sued for, and ask that said tender be held to mitigate the damages.

Upon the trial, which was to a jury, the matter respecting the tender was withdrawn from their consideration. On motion of defendants, the court gave to the jury the following instructions, together with others grounded upon the same theory : " If the value of the bond, at the time of the conversion by defendants, was less than the face of the bond, coupons and interest, the plaintiff is entitled to recover the market value of the same at the city of Dubuque, at the time of the conversion by the defendants, with interest thereon at six per cent to the present time ;" and refused the following instruction, and others grounded on the same theory, asked by the plaintiff : " As the case stands on the pleadings the plaintiff is entitled to a verdict for the face of the bond alleged to have been converted, with interest from the time of conversion to the present time, and this amount you will find for the plaintiff, unless it is shown by the testimony, either that the State of Minnesota was insolvent at the time the bond was converted, or that the bond was illegally issued, or that it has been paid, and the burden of proof of these facts rests on the defendants."

The trial was on the 21st day of June, 1871, and on that day the jury returned a verdict for plaintiff for $535.

The plaintiff moved to set aside the verdict and for a new trial, because of error in giving and in refusing instructions. The motion was overruled, and judgment was entered upon the verdict. The plaintiff appeals, and assigns as error, both the giving and the refusing of the instructions, as above set out.

*W. J. Knight* and *H. B. Fouke* for the appellant.

*Crane & Rood* and *Adams & Robinson* for the appellees.

COLE, J. — The counsel for the respective parties concur in the statement, that the only question here for decision is as to the proper rule of damages in the case. The plaintiff's counsel claim that the face of the bond and matured coupons, with interest from date of conversion, constitute the true legal measure of damages, unless it should be shown that the maker was insolvent, or that the bond and coupons were illegally issued or have been paid; while the defendants' counsel claim that the market value of the bond and coupons at the time of conversion, with interest therefrom, is the correct rule, in the absence of malice or fraud. It is also conceded that there was no proof of either malice or fraud by defendants, or of the insolvency of the maker, the illegality of the bond or coupons, or of their payment either in whole or in part, prior to their conversion by the defendants. So that we have the single proposition for decision, whether, nothing further being shown, the face or market value of a municipal bond is the measure of damages for its conversion?

There can be no reasonable doubt, as a general rule, either upon principle or upon the authorities, that in an action for the conversion of the note, bond, bill or other security made by an individual, the true legal measure of damages is the face of, or the amount due upon such security, with interest from the conversion up to the trial, unless it is shown that the maker was insolvent, the

Griffith v. Burden.

security illegal, or that it had been paid in whole or in part. In the absence of any showing respecting these facts, the law presumes, upon the security itself, that the maker is solvent, the security valid and unpaid. The other facts may therefore be shown for the purpose of proving the real and true value of the security.

It is not competent to introduce witnesses to testify as to the market value of such individual note or security, and this for several reasons: the primary purpose, in legal contemplation, for the making of such note, bill or security, was not for sale in the market; it was executed, in contemplation of the law, in furtherance of or in accomplishing a commercial purpose. So tenaciously has the law enforced obedience to the purposes for which such individual securities were originated and recognized, that it has refused (unless where statute has changed it) to allow them to be levied upon or sold under its own process of execution, or to suffer pledgees of such securities to sell them, as they might public securities or other property, but requires that they shall be retained till maturity and collected. And, again, if such testimony could be received, it is hardly possible that the individual notes or bills of one person should require such extended circulation as to gain a market value, in the proper sense of that term. And, further, the market value of such securities would depend somewhat, at least, upon the personal and moral character of the obligors, as well as their pecuniary ability; and hence, to determine the market value would involve an inquiry into that character, which the law, as a rule, prohibits, and only allows in exceptional cases. But the law, in its wisdom, has provided for the attainment of justice in such cases by allowing testimony as to the pecuniary ability, or the want of it, insolvency of the obligors, for the purpose of determining the real value of such securities in any given case. The rule of damages as claimed by the plaintiff's counsel, was substantially cor-

rect, when applied to the note, bill or other security of individuals. But such individual securities are very different in their origin, character and purpose from municipal and corporate bonds, such as the one which is the foundation of this action. As was said by this court, in *Clark* v. *The City of Des Moines*, 19 Iowa, 199 (*i. e.*, 213), "this class of securities are made and issued for the express purpose of raising money by their sale." They cannot accomplish the purpose of their execution and issue except by being sold; and they cannot be sold without establishing their market value. They are made for the market, are sold in the market, and hence must have and always do have a market value; and while it is true that this value may and often does change, it is, nevertheless, always susceptible of very direct and satisfactory proof.

It is, however, true that this class of public and corporate securities were, at first, regarded in the law, very differently from their present *status*; courts were originally inclined to regard them in the light of, and to measure the rights of parties thereto by, the rules of the law merchant. Hence such securities were held non-negotiable, because they were sealed instruments; and they were denied the peculiar privileges and exemptions which pertain to negotiable paper. Subsequently, they came to be acknowledged as negotiable instruments, and the holders of them were protected to the same extent, as the holders of negotiable notes and bills under the law merchant. A little later, they came to be recognized as negotiable in as full and complete a manner as bank bills or the national currency of the country; and, now, they stand not only equal before the law to the negotiable paper pertaining to the commercial business of the country, and to our circulating medium; but they are also, for their greater advantage, and for the purpose of causing them to be accepted as among the most desirable investments for capital in the monetary centers of the world, regarded as *chattels*, in so

far as that character shall tend to relieve them from defenses and burdens incident to *choses in action* merely, and give to them a merchantable and vendible quality.

Under the more modern rule respecting municipal and corporation bonded indebtedness, whether the power to issue the bonds is derived from authority to " borrow money," to " negotiate a loan," to " fund its indebtedness," to " contract a debt and issue its bonds therefor," to " issue and sell its bonds not exceeding, etc.," or, generally, to do any act or accomplish any work requiring, or which may properly be effectuated by the issuance of bonds, the power to sell the bonds in the market directly by the officers and agents of the municipality or corporation, issuing them, is well established. In other words, the authority to sell the bonds in the market, is an incident attendant upon and growing out of the power to issue them. And, it follows, hence, that the right and title of the first purchaser, directly from the municipality or corporation, is as perfectly and fully enforced and protected, as if he were a third person buying the bonds in a subsequent market sale. The character of a chattel attaches to them under such circumstances, and the title passes as effectually as if they were chattels fairly sold at their market value, and no equities, such as might attach, under like circumstances to ordinary commercial paper can be interposed as a defense, total or partial, in an action upon them. As was decided by a very able court, in one of the many cases we have carefully examined ;—" the obvious interest of the companies is that these bonds should be saleable, free from all questions of equity. They are generally issued for the express purpose of raising money by their sale. To declare them subject to the equities existing in the case of ordinary bonds, upon every transfer of them, would be to strike a blow at the credit of the great mass of these securities now in the market, the consequences of which it

would be impossible to predict." *The Morris Canal & Bank Co.* v. *Fisher*, 1 Stock. Ch., 667 (*i. e.*, 700).

This character of chattels, which by the modern rule is attached to these securities, must also, upon principle, exempt them from the defense of usury (as has been done by express statute in several of the States). For, if they are regarded as chattels and this character is accorded to them in order to promote their sale and enhance their value as investments, then, since usury cannot be predicated upon a sale of chattels merely, neither can it be predicated upon a sale of bonds having the recognized character of chattels. It is true there are one or more recent cases, more or less complicated with confederate currency and peculiar hardships, real or imaginary, in which the defense of usury has been sustained. But these are exceptional, and are grounded upon peculiar constitutional or statutory provisions, and certainly are not in accord with the current and weight of the modern authorities.

We have thus, as briefly as practicable, and generally, outlined the judicial history and *status* of bonds, like that respecting which this action arises, for the purpose of showing that the rule for the measure of damages, as claimed by the appellant's counsel, though a very correct and proper one when applied to individual and purely commercial paper, has no just application to a case for the conversion of a municipal bond. And this, for the reason that the latter are not commercial securities merely; they are also currency, and they are chattels.

It appears to us that upon any recognized rule respecting the measure of damages, the instruction given by the court below was correct. It is a rule of the civil law that a party is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. The same rule also obtains in the common law, and has been very perspicuously stated, with the reasons

for it, by an able judge (ALDERSON, B., in *Hadley* v. *Baxendale*, 9 Exch. 341, *i. e.* 354), as follows: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered, either arising naturally, *i. e.*, according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of the injury which would ordinarily follow from a breach of contract under those special circumstances, so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases, not affected by any special circumstances, from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case; and of this advantage it would be very unjust to deprive them."

It was in obedience to this rule, though unmentioned, that, in a case cited by appellant's counsel, the court allowed the plaintiff to recover the face of Peruvian *billets*, instead of their market value, since, and owing to the special circumstance that the plaintiff's government was bound to see that the *billets* sued for were paid in full, while no such obligation existed in respect to other

*billets* upon which the market value proven in the case was predicated.

No special circumstances were shown in this case, and it is very manifest that both parties must have contemplated that in case the defendants should fail to collect or return the bond, they should pay the plaintiff its market value. For that would be the measure of the plaintiff's loss, nothing further appearing. But, if in point of fact the plaintiff had held the individual guaranty of a responsible person for the payment of that particular bond and coupons which he could readily and legally enforce, and these facts were communicated to the defendants, then they might properly be held, under the rule just stated, to account for the value of that particular bond, with its individual guaranty; for, if such guaranty was of a particular bond only, it could not, or might not, acquire any distinct market value thereby; but if the guaranty was of a series of bonds, it would doubtless be an element affecting their market value, or had the plaintiff prior and at the time of the conversion held the money of the State, which he could lawfully have applied in satisfaction of the bond, and such fact had been known to the defendants, then the plaintiff might be entitled to the face of the bond and coupons; or, had the plaintiff held any security or assurance from the State of Minnesota for the payment of his particular bond, which the defendants knew and which became worthless to the plaintiff after the conversion of the bond by the defendants, the increased value to the plaintiff thereby, over others of the same issue, would be recoverable by him; for he has, by the conversion, lost not only the market value of the bond, but also the increased value it possessed by reason of such security, assurance or stipulation. In other words, whenever a special value attaches to the bond converted, by reason of any stipulation or security pertaining to it, that special or increased value may be recovered, if the facts respecting

Griffith v. Burden.

it were known to the defendants, for, it is often true that bonds of the same municipality or corporation have, in the market, like our federal government bonds, different values, dependent upon the stipulations or terms of the bonds and the date of their maturity.

Another rule, equally well grounded, and more frequently applied, is, that the damages ought to be such as would compensate the party for his loss. In this case, the plaintiff has lost his bond ; another like bond of precisely equal value to the plaintiff can be purchased in the market for the amount of the verdict in this case. Hence, the verdict compensates him for his loss, and is the precise measure of his damages under the rule last above stated. But, suppose the bond in controversy was, like bonds of our State and of the Federal government, above par ; that is, worth more than its face, the rule contended for by appellant's counsel would not compensate him for his loss, and would, therefore, be at variance with the rule we are now considering ; while the rule given by the court below would afford just and exact compensation in that and in every case, regardless of whether the bond sued for was worth more or less than its face.

And, if we apply to the case the rule of damages respecting *chattels*, which, under the modern adjudications, it is proper to do, for such bonds are held to be chattels, as hereinbefore stated, we have the same result. For the measure of damages for the conversion of a chattel is generally, and in the absence of special circumstances, the value of the chattel at the time of the conversion, with interest thereon up to the date of trial. We say, in the absence of special circumstances, because more may be recovered, if more has been lost, by reason of those special circumstances, and they were known to the defendant at the time, and were reasonably within the contemplation of the parties. The fact, however, if it be assumed, that the State of Minnesota is solvent, and will certainly

and ultimately pay all its bonds cannot be considered as among such special circumstances, for this fact is one of the elements, and a prominent one going to make up the present market value of the bond in controversy, and is also, or may be equally, true of all other municipal bonds.

We have thus stated our conclusions, and they are grounded, not alone on our views of the principles involved in the case and of what the law ought to be, but every proposition stated and every position assumed is, as we think, supported by adjudicated cases, very many of which we have examined with interest and care, but which we have not deemed it necessary to cite.

Affirmed.