INDEPENDENT SCHOOL DISTRICT OF COUNCIL BLUFFS, Appellant, v. FIRST NATIONAL BANK OF COUNCIL BLUFFS et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS: Bonds—Breach of Contract to Buy—Damages.** Inasmuch as a school district is required by law to sell its bonds for at least *par*, it may not, in an action for the breach of a contract to buy bonds *at* par, recover damages on the basis of the difference between par and a lower market value.

*Appeal from Pottawattamie District Court.*—GEORGE W. CULLISON, Judge.

JUNE 22, 1923.

REHEARING DENIED DECEMBER 14, 1923.

ACTION at law, to recover damages for the breach of a contract to purchase an issue of school bonds. At the close of plain-

tiff's evidence, the trial court sustained defendants' motion for a directed verdict.   Plaintiff appeals.—*Affirmed.*

*D. L. Ross, Raymond Smith,* and *Helsell & Helsell,* for appellant.

*Saunders & Stuart, John P. Organ, H. L. Robertson,* and *W. S. Baird,* for appellees.

PRESTON, C. J.—Numerous issues were raised in the district court.   They are set out at considerable length in the abstracts and arguments.   A number of assignments of error and brief points are made.   As we view the case, there is one proposition which is controlling.   This being so, we shall refer to other matters as briefly as may be.

The petition declares upon an express contract for the purchase by the defendants, of $475,000 worth of plaintiff's school bonds, which contract, it is claimed, was made about November 17, 1919, by its acceptance of a verbal proposition made by one Wickham, acting as the representative of the defendants.   Wickham is the president of one of the defendant banks and vice president of the other.   Plaintiff alleges that, on February 9, 1920, plaintiff served on defendants written notice of its acceptance of their offer and confirmation of the sale.   It is alleged that the accepted bid, or contract, is as follows:   That defendants would take the bonds and pay therefor par and a premium of $1,500, bonds to bear interest at four and three-fourths per cent; that they would pay the attorney's fee for the examination of the transcript of the record, and pay the cost of printing the bonds when delivered; that they would accept and pay for the bonds at such times as might be designated by the board; that the bonds might be delivered whenever pending litigation attacking their validity should be terminated; and that they would advance, as part of the purchase price, such sums as might be necessary for payment on the purchase price of the school site and the architect's fees, and charge the same rate of interest for the advances.

It was further alleged that, pursuant to the contract, and in part performance thereof, plaintiff issued its warrants for payments to the architects and the balance due for the school

site, which defendants paid, pursuant to their agreement; that plaintiff paid an attorney for his opinion; that, on May 11, 1920, defendants breached their contract, and served written notice of their refusal to proceed further; that plaintiff has been ready, able, and willing to perform its obligations under the contract; that, at the time of the breach, said bonds had, by reason of changed market conditions, greatly depreciated in value; that, on May 11, 1920, and since, there has been no market for said bonds, within the statutory limit as to the rate of interest and the terms upon which the same might be legally sold; and that, by reason of the decline in the market value of said bonds, and defendants' failure to perform their contract, plaintiff has been damaged. The damages asked and the measure of damages relied upon by plaintiff are the difference between the par value of the bonds proposed to be issued according to the contract, and the market value of such bonds, or bonds of like character, on May 11, 1920, in the sum of approximately $65,000, aside from the premium of $1,500, which last named item was withdrawn by plaintiff. The claim is that, on the last date mentioned, the bonds were worth only 86 2/3 cents on the dollar.

We may state, in passing, that, on the trial, when the question of the measure of damages arose, the court suggested a different measure from that suggested by plaintiff, and offered to permit plaintiff to show what, if anything, the district had actually lost by defendants' refusal to take the bonds; that, if they had to pay more for the money, or had been put to any expense in the matter, the district would be entitled to recover the same; and that, if the bonds had been sold at a less favorable figure than that offered by defendants, plaintiff would be permitted to show that fact. Counsel for plaintiff refused to offer evidence as to any other measure of damages,—that is, than the difference between the par value and the alleged market value.

All the foregoing matters set out in plaintiff's petition, except as to the notices, were put in issue by the defendants' answer. In addition to the general denial, defendants set up that the alleged contract was within the statute of frauds, and was not within any of the exceptions thereto; that there was such unreasonable delay on the part of plaintiff in the delivery

of the proposed bonds that defendants were absolved from proceeding further, and that their notice of May 11th was justified; that plaintiff suffered no damages by the alleged breach.

Plaintiff filed a reply, to meet the allegations of the answer.

A summary of defendants' motion for directed verdict and the grounds thereof is that there was no complete contract made; that the bonds were not in existence; that there was no agreement or meeting of the minds of the parties upon essential matters, in order to make a binding contract; that there was no evidence of any damage to plaintiff by reason of the alleged failure of defendants to carry out the contract; that there was no issue of bonds authorized by the school board, or action by the board authorizing the same at any time prior to the notice of May 11th; that more than a reasonable time had elapsed after the making of the contract within which plaintiff should deliver the bonds in order to fix any liability upon defendants; that the contract declared upon is within the statute of frauds; and that there is no evidence to take it out of the statute.

Because the court refused to admit evidence in proof of damages according to the rule contended for by plaintiff, plaintiff withdrew its claim for the $1,500 premium, and the court directed a verdict for the defendants. There was no evidence of any other damage, unless it might be claimed that plaintiff was entitled to nominal damages. We do not reverse in order to allow such damages.

A brief statement of some of the facts may be helpful. The voters of plaintiff district authorized the issuance and sale of bonds in the total sum of $475,000. On November 17, 1919, a suit was brought against the district, to enjoin it from selling the bonds. At a meeting of the school directors, the evening of that day, other bond buyers appeared before the board, and orally made their bids. This is the time when plaintiff claims the contract was made with defendants. The motion was made, carried, and recorded, accepting the bid of defendants, Wickham being present. The architects had already been employed, and a part of the purchase price for the school site had been paid. The plaintiff sought to show that, on November 20, 1919, the board awarded the contract for the construction of the building to Wickham for $332,750, but defendants' objection thereto

was sustained. In January, 1920, the transcript for the issue of the bonds was furnished Wickham. It was submitted to an attorney for his opinion on the validity of the issue. It was approved by the attorney, subject to the termination of the pending lawsuit. It was then supposed that this would be a matter of but a short time. In February, 1920, the electors of the school district filed a petition for the submission of a proposition to cancel the authority theretofore granted, in regard to issuing the bonds. Defendants contend that this action by the electors suspended the right to issue the bonds in the meantime, and that this delay was not occasioned by the defendants. They further contend that, as a matter of common knowledge, the government had, during the war, placed restrictions upon the issuance of municipal bonds, and that, after the war, the market for such security was in such unstable condition that the delivery of such bonds necessarily had to be made within a comparatively short time after the purchase. Nearly six months had elapsed from the time the defendants had made their offer for these bonds when the notice of May 11, 1920, relied upon by appellant as a breach of the contract, was given. The school election was held on the above proposition in March, 1920, and the proposition to revoke prior authority defeated. On the day of this last election, the plaintiff in the injunction suit dismissed the case. On the following day, another party commenced a similar suit, attacking the validity of the proposed bonds for the reasons urged in the prior suit, and upon other grounds; also alleged that there was fraud perpetrated at the election, such as would change the result. Both the injunction suits involved issues of law and fact, which were necessarily to be determined in order to settle the question as to the validity of the bonds. There was a lengthy trial of the last suit, and on September 25, 1920, it was decided that the election was legally held. This was nearly a year after the contract. On May 10, 1920, the school board received bids for the construction of the building, and the contract was awarded to Neumann, of Des Moines. On the following day, the notice before referred to was given, and on June 5, 1920, notice was served upon Wickham and the defendants that the district would hold them liable for

damages suffered by reason of their failure to take the bonds. This suit was brought in August, 1920.

It was stipulated that, if the bonds contemplated, bearing four and three-fourths per cent interest, were put upon the market on May 11, 1920, they would bring no premium over and above the face value of the bonds.

The trial court excluded evidence offered by plaintiff, wherein it sought to show that the bonds in question were worth less than par on May 11, 1920; that the bonds in question were not worth their face value at five per cent interest on May 11th; that the bonds had a fair and reasonable market value on the open market at Council Bluffs on May 11th of par and accrued interest, provided the bonds were issued so as to bear interest at the rate of six per cent; or that these bonds, bearing four and three-fourths per cent semiannual interest, did, on November 17, 1919, provided the interest rate was changed to five per cent, have a fair and reasonable market value upon the open market at Council Bluffs; that it was a matter of mathematical computation to translate the value of four and three-fourths per cent bonds into the value of five per cent bonds; and other like questions. Error is now predicated upon such rulings and the ruling of the court on the measure of damages.

Other errors are assigned, and, as said, other points are relied upon; but, in the view we take of the case, it is unnecessary to discuss them.

It does not appear directly that the bonds were ever issued or sold by the district, or if so, when. There is no pretense that the bonds were in existence at the time it is alleged the contract was made, or at the time of its alleged breach. The inference from all the circumstances is that they were sold at a later date. If so, they were, under the law, necessarily sold by the district at par. The statute, Code Section 2812 and amendments, prohibits the sale of such bonds at less than par. It would seem, then, as between the district and the defendants, that the bonds, when issued, could not have a value or market value less than par. It was stipulated that they were worth no more than par. Defendants' bid and the contract was to purchase them at par. It is appellees' contention that plaintiff suffered no damage by the refusal of the defendants to take the bonds under the con-

tract, and that this furnishes a complete answer to every claim of error made by appellant. It was the view of the trial court, as reflected in the record, that the contract is more in the nature of an agreement to advance or loan money to the district on the supposition that the bonds would be issued, and that the true measure of damages, under the circumstances of this case, so far as it relates to the market value of the bonds in controversy, is the difference, if any, between their contract price and their value, provided that such value is not less than 100 cents on the dollar. Whether this is the true rule, we need not determine. We are now concerned only with the question as to whether the measure contended for by appellant is the true rule. Cases are cited by appellant to sustain their contention that, in an action for damages for the breach of an executory contract to purchase personal property, the measure of damages is, in the absence of special circumstances, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or if no time was fixed for acceptance, then at the time of the breach. Another proposition, as stated by appellant, is that an accepted offer to purchase bonds of a school district is one for the sale and purchase of negotiable public securities, for the breach of which by the purchaser compensatory damages are recoverable. They cite *Griffith v. Burden*, 35 Iowa 138, 143; *City of Junction City v. Central Nat. Bank*, 96 Kan. 407 (153 Pac. 28). The further claim is made for the *Griffith* case that the statute which provides that the bonds shall not be disposed of for less than par does not prescribe or have any relation to the measure of damages for the breach of a contract to purchase such bonds, and further, that the sale of bonds is more than the mere loan of money, and is a sale of negotiable instruments—of chattels. The question in the *Griffith* case, in so far as it relates to damages for conversion of the bond, was whether it was the market value at the time of the conversion or the face of the bond. The statute prohibiting the sale of school bonds at less than par was not in force at the time the *Griffith* case was decided. In that case, bonds had been issued, and there was a conversion of an existing bond. In the *Junction City* case, supra, suit was brought by the city against a bank for its refusal to carry out a con-

tract for the purchase of city bonds. The bank refused to take the bonds, and the city sought a market elsewhere, and was compelled to sell them at a discount. The bank refused to take the bonds on the ground that they were illegal, but it was held that they were purchased subject to the legality of the issue. There the bonds had been issued and sold at a discount. In the instant case, they could not be sold at a discount, under the Iowa law. It is contended by appellees that, when the school board met, November 17, 1919, to receive proposals for the purchase of bonds, it was seeking to borrow money under authority given by the statute to issue bonds "for money borrowed for the erection or completion of schoolhouses," etc. (Code Section 2812); and further, that, this being so, the measure of damages for the breach of a contract to lend money is the difference between the interest which the borrower would be required to pay under the contract and that which he did in fact pay for the money (citing a number of cases, among them *Wissmath Pkg. Co. v. Mississippi R. P. Co.*, 179 Iowa 1309, and *Thorp v. Bradley*, 75 Iowa 50).

For reasons before stated, it is unnecessary to determine whether this is the true rule.

A large number of cases are cited by both appellant and appellees, but we do not understand counsel to claim that the facts in any of the cases are like the instant case. Ordinarily, the measure of damages in any case is adequate compensation for the loss incurred; and upon breach of a contract, a recovery is limited to such damages as arise naturally therefrom.

We are of opinion that, since the statute prohibits the sale by the district at less than par, it cannot be said that the bonds had a market value, in the hands of the district, less than par. As before pointed out, the bid of the defendants and the contract were to take the bonds at par. They were worth no more. In contemplation of law, they were worth par in the hands of the school district. It seems to us, and we so hold, that it cannot be said that the plaintiff suffered any loss or damage in this respect. We think that the trial court rightly excluded evidence as to the alleged market value of these bonds at less than par, and that the court properly held that the measure of damages relied upon by appellant was not applicable to the case. There

was no evidence introduced as to any other damage, although, as said, the trial court offered to permit plaintiff to show any other damage that it had suffered. The proposition was clear-cut that appellant was relying upon the one rule as to the measure of damages, and claiming that it was entitled to recover on that or nothing. The ruling of the trial court in sustaining defendants' motion for a directed verdict, and the judgment entered thereon, are affirmed.—*Affirmed.*

WEAVER, STEVENS, and DE GRAFF, JJ., concur.